619 So.2d 1170 (1993)
A. Stirling ALBRITTON and Ruth Taber Albritton
v.
FIDELITY NATIONAL BANK TRUST FOR Alvin Hughes ALBRITTON Through Its Trustee HIBERNIA NATIONAL BANK, and Alvin H. Albritton.
No. CA 92 0870.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
Claude F. Reynaud, Jr., Baton Rouge, for plaintiff-appellant A. Stirling Albritton, et al.
John Dale Powers, Baton Rouge, for defendant-appellee Alvin H. Albritton.
Neil H. Mixon, Baton Rouge, for Fidelity Nat. Bank and Alvin H. Albritton.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
Claude F. Reynaud, Jr. (Reynaud), plaintiffs' attorney, suspensively appeals the judgment of the trial court holding him in contempt of court, and assessing a penalty of $500.00 payable to the Judicial Expense Fund and attorney's fees in the amount of $1,000.00 payable to defendant's attorney's firm. We reverse.

*1171 FACTS
This appeal stems from a lawsuit filed by plaintiffs, Dr. A. Stirling Albritton and Ruth Taber Albritton (sometimes collectively referred to as the senior Albrittons), against their son, Alvin Hughes Albritton (Alvin).[1] Plaintiffs' suit seeks to revoke certain donations made to Alvin Albritton pursuant to LSA-C.C. art. 1559, on account of ingratitude of the donee.
On July 16, 1991, Alvin made a settlement proposal which was transmitted by letter to the plaintiffs, with a copy to the presiding judge. Plaintiffs apparently thereafter sought certain information from Hibernia National Bank to evaluate the offer and determine the amount of funds Alvin would receive pursuant to the proposed settlement. However, Alvin subsequently objected to the bank trustee furnishing the requested information. According to plaintiffs, they could not properly evaluate the settlement proposal without receipt of the requested information.
Concurrently with the settlement offer on July 16, 1991, Alvin's attorney, Mr. John Dale Powers, also sent a letter to the presiding judge requesting that the court schedule a status conference with the attorneys and the parties to the litigation to discuss "the settlement and status of th[e] matter." The letter also contained a listing of the names and addresses of the individuals to be notified concerning the status conference.
On July 18, 1991, the deputy clerk of court mailed a notice to all attorneys involved in the proceedings, advising that a status conference had been set for July 29, 1991 at 8:30 a.m. Although the letter requesting the status conference requested that the court "schedule a face to face status conference with the attorneys and with all parties," the notice issued merely stated:
YOU ARE HEREBY NOTIFIED OF THE FOLLOWING ACTION FOR THE AFOREMENTIONED CASE ON: 07/29/91 AT: 08:30 A.M. FOR: STATUS CONFERENCE
STATUS CONFERENCE REQUESTED BY MR. JOHN DALE POWERS
After receiving a copy of the notice, Alvin's attorney discovered that the notice had been sent to the attorneys only; and thereafter, by letter dated July 22, 1991, Alvin's attorney sent a letter to the judge's office requesting that notice of the status conference be sent to all parties to the litigation. Accordingly, a second notice was sent to the parties, including the senior Albrittons. On July 29, 1991, Reynaud attended the status conference as scheduled. The senior Albrittons did not attend upon the advice of Reynaud, who told them their attendance was unnecessary.
On October 10, 1991, Alvin filed a rule to show cause why Dr. and Mrs. Albritton should not be held in contempt of court or have sanctions imposed against them for their failure to attend the status conference. On October 31, 1991, Alvin filed a supplemental rule to show cause why Reynaud should not be held in contempt of court or have sanctions imposed against him for advising the senior Albrittons not to attend the status conference. A hearing on the matter was conducted on November 27, 1991. Following the hearing, judgment was rendered holding Reynaud in contempt of court and assessing against him a penalty of $500.00 and attorney's fees in the amount of $1,000.00. Dr. and Mrs. Albritton were not held in contempt nor were sanctions imposed against them. From this judgment, Reynaud appeals.

DISCUSSION

Finality of the Contempt Judgment
At the outset, we shall address appellee's procedural objection to the appeal. Alvin contends that the judgment holding Reynaud in contempt of court is not a judgment from which an appeal may be taken, and that the proper remedy is to apply for *1172 supervisory writs.[2] We disagree.
The judgment rendered by the trial court states that "the Rule to Show Cause filed on behalf of Alvin H. Albritton be denied against plaintiffs A. Stirling Albritton and Ruth Taber Albritton." However, the judgment specifically holds Reynaud, a non-party to the litigation, in contempt of court, and imposes sanctions and attorney's fees. In Berard v. American Employer's Insurance Company, 246 So.2d 686 (La. App. 1st Cir.1970), this court rejected a similar objection stating:
While a party litigant so cast in judgment may obtain relief from the imposition of similar penalties upon appellate review of the merits, an attorney so cast has no such certain remedy. The attorney's legal status in such instances would appear to depend upon the outcome of litigation to which he is not a party.
Berard, 246 So.2d at 687. Thus, the judgment against Reynaud, counsel for plaintiffs, is a final appealable judgment, notwithstanding the fact that a similar judgment against a party to the litigation would have been a non-appealable interlocutory judgment.

Merits of the Contempt Judgment
Appellant contends on appeal that the trial court erred in holding him in contempt of court and imposing sanctions. We agree.
LSA-C.C.P. art. 221 provides:
A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.
Contempts of court are of two kinds, direct and constructive.
Direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record. LSA-C.C.P. art. 222. Constructive contempt of court is any contempt other than a direct one. Clearly, in the present case there was no direct contempt involved.
A person may not be adjudged guilty of contempt of court except for misconduct defined as such expressly by law. LSA-C.C.P. art. 227; Nelson v. Nelson, 421 So.2d 366 (La.App. 1st Cir.1982). Any contumacious behavior on the part of Reynaud must fall within those acts constituting constructive contempt of court and set forth in LSA-C.C.P. art. 224. Nelson, 421 So.2d at 368.
Among the acts enumerated in LSA-C.C.P. art. 224 constituting constructive contempt of court is a "wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." LSA-C.C.P. art. 224(2). Failing a finding that Reynaud wilfully disobeyed a court order, the court is without the power to punish for constructive contempt. Nelson, 421 So.2d at 368.
In written reasons for judgment, the trial court stated:
The Albrittons did not attend the conference because their counsel advised them to not attend. Their attorney did not advise the Court of the intended nonattendance of plaintiffs at the conference. Therefore, the Court was imposed upon and a considerable amount of the Court's time was wasted. A brief telephone call by plaintiffs' counsel to the Court to advise the Court of counsel's advise [sic] to his clients would have obviated the problem. Courtesy demanded at least such a communication the Court. Notices and Orders from the Court are not invitations calling for a R.S.V.P.they are commands to attend or comply. If all of this Court's Notices, Orders, Judgments, Rules, etc. are considered by those persons to whom they are directed as mere invitations requiring only that these persons to whom they are directed *1173 R.S.V.P. then the authority of the Court to conduct its duties is nil.
We conclude that in the present case, the trial court erred in holding Reynaud in contempt of court in several respects. First, the senior Albrittons were not under a court order to appear at the status conference. Contrary to the trial court's characterization of the July 22, 1991 notice as a "command to attend", our review of the record mandates reversal as we view the notice as nothing more than a notice to all involved that a status conference had been requested and scheduled. The senior Albrittons were not served with a subpoena; rather, they received a notice advising that a status conference had been requested and would be held on July 29, 1991. Thus, by advising the senior Albrittons that their attendance was not required at the status conference, Reynaud did not disobey a court order nor did he advise his clients to do so.
Secondly, we conclude that Reynaud's actions under the circumstances were not wilfully disobedient. Wilful disobedience means an act or a failure to act that is done intentionally, knowingly and purposely, without justifiable excuse. Nelson, 421 So.2d at 368. There is nothing in the record to establish or even suggest that Reynaud intentionally, knowingly and purposely disobeyed a court order.
Appellee argues that Reynaud's behavior constituted constructive contempt pursuant to section (10) of LSA-C.C.P. art. 224, which provides:
(10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt.
The trial court is vested with broad discretion in the conduct of proceedings before it. We are also cognizant of the need to preserve the integrity and dignity of the judicial system and respect for its authority as recognized by the learned trial court. However, under the facts presented herein, we are unable to conclude that Reynaud's action in advising his clients that their attendance at the status conference was unnecessary amounts to an intentional obstruction or interference with administration of justice, or disrespect for the court or its authority. This is especially true in light of the fact that the notice at issue herein was merely a standard form mailed to the parties. It is also apparent from the record that the Albrittons were elderly and obviously wished to avoid a confrontation with their son. Moreover, in view of the ongoing dispute between Alvin and his parents over the release of the financial information sought from the trustee, we are unable to conclude that Reynaud wilfully or intentionally obstructed the administration of justice by disobeying a court order.
Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Unless a litigant willfully disobeys a direct order of the court issued prior to the contempt rule, he should not be held in contempt, even if his acts tend to frustrate the opposing litigant.
Kent v. Stewart, 413 So.2d 583 (La.App. 1st Cir.1982) (citations omitted).
Accordingly, we reverse the judgment of the trial court finding Reynaud in contempt of court and assessing a penalty and attorney's fees. All costs of this appeal are assessed against the appellee, Alvin Hughes Albritton.
REVERSED.
NOTES
[1] Also named as defendant in the lawsuit was the Fidelity National Bank Trust for Alvin Hughes Albritton, through its trustee, Hibernia National Bank.
[2] Appellee also filed a pleading with the trial court styled "Opposition to Claude F. Reynaud, Jr.'s Motion for Suspensive Appeal."