813 So.2d 1273 (2002)
Olen CLARK, Individually and on Behalf of David Clark, Michael Clark, James P. Clark and Sue W. Clark, Plaintiffs-Appellees/Appellants,
v.
G.B. COOLEY SERVICE and Ouachita Parish, Defendants-Appellees/Appellants.
No. 35,675-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2002.
*1276 Woodley, Williams, Fenet, Boudreau, Norman & Brown By Michele S. Caballero, Milo A. Nickel, Jr., Michael G. Hodgkins, Lake Charles, Counsel for Plaintiffs.
Hayes, Harley, Smith & Cascio, L.L.P., By Joseph D. Cascio, Jr., Monroe, Counsel for Defendant G.B. Cooley Hospital for Retarded Citizens.
Before BROWN, GASKINS and KOSTELKA, JJ.
GASKINS, J.
The plaintiffs are the parents of David Clark, a mentally disabled man who died as a result of a fight with another resident of G.B. Cooley Hospital for Retarded Citizens. They sued individually and on behalf of David for wrongful death and survival damages. The trial court granted judgment in favor of the plaintiffs for wrongful death, but did not award medical and funeral expenses. The trial court also did not make an award for the survival action. The court found that the decedent's father and brother were in contempt of court for talking to the news media about the case. The plaintiffs' attorney, Milo Nickel, Jr., was sanctioned for "aiding and abetting" his clients in violating the court's sequestration order. All parties have appealed the trial court judgment. For the following reasons, we affirm in part, amend in part, and reverse in part the trial court judgment.

FACTS
David Clark was the youngest son of Olen and Sue Clark, residents of Lake Charles. David was diagnosed with metal retardation at a young age. He had been enrolled in various facilities throughout his life and also was periodically cared for at home. In 1985, his parents divorced, but continued to work closely together to care for David. In the early 1990s, because they were getting older, the Clarks sought a facility that could provide long-term care for David as well as training so that he could live a somewhat normal life. At that point, David was in his late 20s.
The Clarks eventually decided to place David at the G.B. Cooley Hospital for Retarded Citizens (Cooley) in Monroe. David was an "agitator." He like to tease others and he cursed frequently. This behavior often provoked altercations. Because of David's problems, Olen offered to provide a full-time assistant for his son until he became acclimated to Cooley. Cooley declined this offer. The facility told the Clarks that they would be informed *1277 immediately of any problems with their son.
David was admitted to Cooley for a 30-day evaluation. He was placed in a group with a four-to-one patient/employee ratio. During the 17 days that David was at Cooley, the Clarks visited and telephoned, but were not informed of any problems. According to the plaintiffs, they later learned that David was involved in altercations with other residents on several occasions.
On the morning of July 27, 1993, David, who weighed approximately 180 to 190 pounds, was placed in a work training group with Ernest Norris, who weighed approximately 120 pounds. The group was learning to assemble baby bottles. The plaintiffs contend that Norris was hostile and aggressive and had a history of violent behavior directed toward other residents and the staff. Whenever an altercation occurred, Cooley policy was to immediately separate Ernest from the person he hit. Their job coach, Alberta Dawson, stated that David and Ernest should not have been placed in the same group due to their incompatible personalities.
Around 10:00 a.m. on the morning of July 27, 1993, David and Ernest were involved in an altercation during which David hit Ernest. Staff was instructed to keep the two separated. However, shortly following this incident, Dawson took them into a room to retrieve materials and a fight ensued. David was thrown onto the tines of a pallet jack that was elevated about six or seven inches off the floor. Ernest landed on top of David, with his knees in David's chest and stomach. Dawson did not physically intervene, but called for help. James Williams, also a job coach at Cooley, stopped the fight and separated the combatants. David bent over holding his stomach and chest. More than an hour after the fight, a nurse did a visual check and noted that David's shirt was torn. She did not check his vital signs. David indicated that he was all right and no further medical examination was made. David then ate lunch.
Sometime after lunch, David was assigned to another group with Williams as his job coach. When he began to agitate in that group, he and Williams went into a separate room to assemble baby bottles. After leaving the room for a short time to get supplies, Williams found David unconscious. Williams began CPR. The nursing staff was alerted and an ambulance was called. According to Williams, the nurse told him to quit so she could relieve him. When ambulance personnel arrived, CPR was not being administered. They resumed CPR and took David to the hospital. No one from Cooley told the ambulance personnel or the hospital that David had been in a fight earlier that day. David was pronounced dead in the emergency room at 1:46 p.m.
David's parents were contacted, but allege that Cooley tried to cover up the fight. They were originally told that their son died of an apparent heart attack or possibly a hemorrhage. An autopsy revealed that David died of traumatic injuries including a pulmonary hemorrhage, pericardial effusion, laceration of the mesentery, intra-abdominal hemorrhage, and pancreatic hemorrhage.
On September 21, 1993, Olen Clark, individually and on behalf of David Clark, and Sue Clark filed suit against Cooley for damages arising from David's wrongful death and for his pain and suffering prior to death.
Trial on the merits was held October 26-30, 1998, and May 10 13, 1999. The case was held open for the taking of depositions and the plaintiffs rested on August 2, 1999. *1278 Closing arguments were held on May 12, 2000.
On June 29, 2001, judgment was signed by the trial court awarding damages to Olen and Sue Clark in the amount of $150,000 each. No award was made for survival damages, funeral or medical expenses.
In the meantime, on January 4, 2001, a hearing was held in which Olen and Michael Clark were found to have violated the rule of sequestration and were found to be in contempt of court for speaking to local news media about David's death. They were ordered to pay $500 each. Their attorney, Milo Nickel, was sanctioned and ordered to pay the cost of the contempt hearing.
The plaintiffs appealed, claiming that the damage awards were insufficient and that the trial court erred in failing to make an award for the survival action and for funeral and medical expenses. Olen and Michael Clark also appealed from the contempt judgment against them.
Cooley appealed, claiming that the court erred in finding that it breached any duty owed to David which resulted in his death. In the alternative, Cooley argues that the damage awards are excessive and objects to the order to pay court costs and legal interest.
The plaintiffs' attorney, Milo Nickel, appealed from the court's ruling that he pay the costs of the contempt hearing on the grounds that his behavior was sanctionable.

DUTY OF CARE
Cooley argues that it did not breach any duty owed to David and did not do or fail to do anything that was the cause-in-fact or legal cause of his death. This argument is without merit.
In evaluating Cooley's liability to the plaintiffs, the trial court explored the duty owed by the defendant to David. The court did not make a determination as to whether Cooley was a hospital or a school, but found that under either standard, Cooley breached a duty owed to David and the breach of that duty led to his death. On appeal, Cooley argues that it is neither a school nor a hospital, but is a specialized facility whose purpose it is to assist mentally challenged individuals in achieving independence and a higher quality of life. According to Cooley, it is not the insurer of the safety of the individuals in its various programs.
In many cases where a mentally retarded resident of a facility such as Cooley is injured or killed, the courts have applied the standard of care applicable to hospitals. See Shackleford v. State Through Department of Health and Human Resources, 534 So.2d 38 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1218 (La. 1989); Jones v. State Through Department of Health and Hospitals, 95-1130 (La.App. 3d Cir.3/27/96), 671 So.2d 1074, writ denied, 96-1040 (La.5/31/96), 674 So.2d 263; Daniels v. Conn, 382 So.2d 945 (La.1980). A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care to a particular patient depends upon the circumstances and the facts of the case. Jones v. State Through Department of Health and Hospitals, supra.
In Foster v. Houston General Insurance Company, 407 So.2d 759 (La.App. 2d Cir. 1981), writ denied, 409 So.2d 660 (La. *1279 1982), the standard of care required of a school was applied. In that case, a mentally challenged student was killed at a school operated by the parish school board. This court found that, because of the special relationship existing between teachers and their students, teachers on campus are under a general duty to conduct their classes so as not to expose their students to unreasonable risk of injury and that duty becomes more onerous when the student body is composed of the mentally retarded.
Cooley's name indicates that it is a hospital. The pleadings also reflect that Cooley is a hospital service district. However, like the trial court, we find that a definitive classification of Cooley as a school or a hospital is not critical to the present inquiry. A facility such as Cooley at least has the duty to provide reasonable care to protect individuals such as David from harm. See Hunter v. Evergreen Presbyterian Vocational School, 338 So.2d 164 (La.App. 2d Cir.1976).
To prevail in a negligence claim under La. C.C. art. 2315, the plaintiffs must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or the scope of protection element); and (5) actual damages (the damages element). Roberts v. Benoit, 605 So.2d 1032 (La. 1991).
Cooley had a duty of reasonable care to protect David from harm. It was recognized that David's behavior, including his cursing, often agitated others and sometimes led to the perpetration of violence against him. Cooley was also aware that Ernest Norris was a violent, combative individual who frequently hit other staff members and residents, and who usually targeted the same individual until he was removed from that person's presence. Cooley's plan for Ernest included separating him from the target of his aggression. It was foreseeable that these individuals might become involved in a violent confrontation. After the initial altercation, Cooley breached its duty to David when it placed David and Ernest in the same area. Cooley also violated its own policy by failing to keep the two separated. Cooley failed to exercise reasonable care to protect David from harm.
After the two engaged in their physical altercation, Cooley's nurse did not adequately check David's vital signs. The nurse merely did a visual check. Because she observed very little outward sign of injury, she did nothing else. Dr. George M. McCormick, II, a forensic pathologist, testified that with the injuries inflicted, there might be little sign of outward injury even though the internal injuries were severe. He stated that David's blood pressure may have been normal, but his heart rate would have been elevated. His injuries could have been detected by a physical examination and the bleeding could have been stopped with surgery.
Dr. Abdalla Louis Elias, who performed the autopsy, stated that the blood pressure and heart rate may have been normal. Both physicians agreed that after the main artery to the mesentery began to bleed profusely, CPR would not have been effective in saving David's life.
The breach of Cooley's duty to provide reasonable care to protect David from harm was the cause-in-fact and the legal cause of his death. Although Cooley *1280 claims that David sustained a rare injury as a result of the fight, there was a high likelihood of a fight with injuries under the circumstances present in this case. After the injuries were sustained, Cooley's medical staff made only a cursory examination for injuries some time after the altercation. The plaintiffs proved that David lost his life as a result of Cooley's breach of its duty to use reasonable care to protect him from harm. Accordingly, the trial court did not err in finding that Cooley owed a duty to David, that it breached that duty, that the breach was the cause-in-fact and the legal cause of David's death, and that damages were incurred.

WRONGFUL DEATH DAMAGES
The plaintiffs contend that the award of $150,000 to each of David's parents was inadequate. They also argue that the trial court erred in failing to make an award for David's medical and funeral expenses. Cooley argues that the wrongful death award was excessive. We amend in part the trial court award.
The surviving parents of one who dies due to the fault of another may recover damages for their loss if the deceased left no spouse or children. La. C.C. art. 2315.2(A)(2); Schexneider v. Louisiana Department of Health and Hospitals, 95-32 (La.App. 3d Cir.6/14/95), 660 So.2d 508. The elements of damages for a wrongful death action are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Holt v. Cannon Express Corporation, 31,271 (La. App.2d Cir.12/11/98), 722 So.2d 433, writ denied, 99-0104 (La.4/23/99), 742 So.2d 881.
Much discretion is left to a judge in the assessment of damages in tort cases. La. C.C. art. 2324.1. An appellate court may disturb a damage award only when the record clearly reveals that the trial court abused its discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Gladney v. Sneed, 32,107 (La.App.2d Cir.8/18/99), 742 So.2d 642, writ denied, 99-2930 (La.1/14/00), 753 So.2d 215. The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Gladney v. Sneed, supra.
In support of their contention that the wrongful death award was too low, the plaintiffs assert that the family was extremely close and David was the focus of Olen and Sue's attention. They decided to place him at Cooley to ensure that he would be cared for after their deaths. He was not placed there because they were no longer willing or able to cope with his behavior. Since David's death, they argue that Olen is consumed with guilt and that Sue has had a worsening of her depression. She attempted suicide in 1994 and according to the testimony of family members, has not been the same since her son's death. She is hyper-reactive to any mention of David or his death and requires mental health treatment and medication. She was not able to attend trial or give a deposition because her health care providers determined that it would be dangerous for her to do so.
The plaintiffs also point out that their anguish caused by David's death was heightened by the attempts of the staff at *1281 Cooley to cover up what happened. They cite an incident in which Olen and his son, Michael, were at the facility immediately after the death, and Dr. John Houchin, the person in charge, denied that any physical altercation had occurred.
Cooley objects that the award to the plaintiffs for David's wrongful death is too high. It argues that the plaintiffs placed David in the facility because they could no longer handle him. When his father came to visit, David was given the choice of staying with his father at a motel or remaining at Cooley. David chose to stay at Cooley. Cooley contends that any award to the parents should be reduced.
We find that the trial court award of $150,000 each to Olen Clark and to Sue Clark was not excessively high or low. The record shows that both plaintiffs were extremely devoted to David and strived to provide the best care available for him. They worked diligently to ensure that he had a happy and healthy life. Further, the record shows that this endeavor was supported by David's brothers and their families. Elements of a wrongful death award include loss of love and affection, loss of services and loss of support. While the Clarks are certainly entitled to recover for the loss of love and affection brought about by the loss of their son, they did not suffer any loss of service or support. Viewing all the evidence contained in the record on this issue, we find that the trial court did not abuse its discretion in the amount awarded to Olen and Sue Clark for the loss of love and affection as a result of David's death.
As stated above, included in an award for wrongful death are medical and funeral expenses. The plaintiffs claim that the uncontroverted evidence shows that they incurred ambulance expenses of $267.00 and funeral expenses of $6,260.68. The defendant does not dispute these amounts or argue that they are not properly recoverable by the plaintiffs. These items were not included in the trial court judgment. Therefore, we amend the judgment to include an award to the plaintiffs for these amounts.

SURVIVAL DAMAGES
The plaintiffs claim that the trial court erred in failing to award any damages for David's pain and suffering prior to his death. They contend that such damages are properly awardable if there is any evidence that the decedent in a wrongful death case suffered at all prior to death. This argument has merit.
The plaintiffs have the burden of proving damages, including the pain and suffering experienced by David before his death. Bilello v. Alton Ochsner Medical Foundation, 621 So.2d 6 (La.App. 4th Cir. 1993), writ denied, 629 So.2d 1139 (La. 1993). Severity and duration are factors to consider in assessing damages for pain and suffering. Damages for a decedent's pain and suffering may be awarded when there is a scintilla of evidence of any suffering or pain on the part of the deceased. Bilello v. Alton Ochsner Medical Foundation, supra.
In performing the autopsy, Dr. Elias noted that, due to hemorrhage, the abdomen contained approximately three quarts of blood. He noted a 6-7 inch tear in the mesentery and saw torn blood vessels as well. He observed clear fluid around the heart, bruising of the lungs caused by resuscitative efforts and hemorrhage in the soft tissue around the kidneys. During the course of the autopsy, he determined that the injuries were caused by trauma and asked for an investigation by the coroner's office.
After learning about the fight, Dr. Elias concluded that all the injuries he observed *1282 were consistent with that scenario. He concluded that the injuries were caused by a fair amount of trauma and he would expect that they were painful. Dr. Elias opined that some of the vessels in the mesentery bled following the altercation, but that the larger vessel was pinched and then severed sometime after the fight. In his opinion, when that occurred, David died within minutes.
Dr. McCormick reviewed the autopsy report which showed that David had contusions and bruises on his abdomen, hemorrhaging in the abdomen, a lacerated artery in the mesentery supplying the intestinal tract, bruises in the lower portion of the lungs, bruising beneath the scalp of the head, and a large amount of clear fluid collected around the heart. The pancreas and kidneys were also bruised. Dr. McCormick opined that during the laceration, the artery to the mesentery was crushed and bled slowly for two and one-half hours. The slow bleeding contributed to acute congestive heart failure evidenced by the fluid around the heart. Dr. McCormick stated that the bruising to the pancreas and kidneys would have been painful. Although David ate a sizable lunch after the fight, Dr. McCormick stated that no conclusions could be made about the degree of David's pain based upon the amount of lunch he ate.
After the fight, David was observed holding his stomach and chest. The physicians who evaluated the injuries found that they would have been painful. Although David told the nurse that he was all right, over the course of two and one-half hours, he bled to death as a result of his numerous internal injuries. He was conscious until a very short time prior to death. The record shows that David suffered from his injuries before his death. Therefore, his parents are entitled to recover for his pain and suffering prior to death. We conclude that an appropriate award for this element of damages is $35,000.

CONTEMPT
Olen Clark and Michael Clark, the decedent's brother, argue that the trial court erred in finding them to be in contempt of court for violation of the order of sequestration. The court's finding arose from comments made by Olen and Michael to the news media about the case. This argument has merit.
A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive. La. C.C.P. art. 221. Direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears in the record. La. C.C.P. art. 222. Constructive contempt of court is any contempt other than a direct one. La. C.C.P. art. 224. A person may not be adjudged guilty of a contempt of court except for expressly defined misconduct. La. C.C.P. art. 227. The acts constituting constructive contempt of court set forth in La. C.C.P. art. 224 which apply to this case include:
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
. . . .
(10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt.
*1283 In this case, Olen and Michael Clark were subject to a criminal contempt proceeding. A contempt proceeding ancillary to a civil proceeding assumes the quality of a criminal or quasi-criminal proceeding only after a criminal sentence is imposed. When a determinate sentence is rendered without setting conditions for the contemnor to avoid the sentence imposed or purge himself from it, the punishment is criminal in nature and cannot be imposed unless constitutional protections are applied in the contempt proceeding. Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Swan v. Swan, 35,393 (La.App.2d Cir.12/7/01), 803 So.2d 372. See and compare Davis v. Harmony House Nursing Home, 35,080 (La.App.2d Cir.10/31/01), 800 So.2d 92, writ denied, XXXX-XXXX (La.2/22/02), 810 So.2d 1143; Midyett v. Midyett, 32,208 (La.App.2d Cir.9/22/99), 744 So.2d 669. The proper procedure was not followed in this case and accordingly we reverse that portion of the trial court judgment finding Olen and Michael Clark in contempt of court and ordering them to pay penalties of $500 each.

SANCTIONS
Milo Nickel, the plaintiffs' attorney, contends that the trial court erred in finding any of his actions in this case to be sanctionable and ordering him to pay the costs of the contempt proceeding. This argument has merit.
In his brief, Nickel claims that he is unsure of what exactly the court found to be sanctionable. The rule to show cause was based upon statements by the Clarks about the case to news media and Nickel's alleged action in aiding and abetting the Clarks in making those communications. The trial court apparently found Nickel's actions to be sanctionable in that regard. The trial court did not specifically hold Nickel in contempt of court. The court made the following statement:
I can't say Mr. Nickel is in contempt. I can't say that, because I don't think that would fall within whatever. But I do think that either his participation, acquiescence or condoning of contemptuous conduct or conduct that was in violation of the sequestration order is sanctionable.
In a later hearing to determine penalties for contempt and sanctionable behavior, even the trial court seemed somewhat confused by its earlier ruling, stating that, "as related to Mr. Nickel, I didn't even know, I couldn't even remember we had held Mr. Nickel in contempt to be honest."
Mr. Nickel replied, "I think the term you found as to me, Your Honor, was sanctionable."
Nickel echoes the arguments made by the Clarks that they were no longer bound by the rule of sequestration at the time they spoke to news media and that they did not knowingly and intentionally violate any order of the court. Regarding his own conduct, he cites the Rules of Professional Conduct concerning communications with the media about ongoing litigation.[1] *1284 He contends that because this was not a jury trial, the proceeding was not prejudiced by the comments. He also claims that all information given was available on the public record. Therefore, he asserts that he did not violate any ethical rule.
We note that the trial court did not find Nickel to be in contempt of court, but merely found that his conduct was "sanctionable." Accordingly, the trial court was without authority to impose any penalty or sanction upon Nickel for contempt of court. See and compare Lacombe v. Randy Theriot Construction, 94-822 (La.App. 3 Cir.1994), 647 So.2d 531; Albritton v. Fidelity National Bank Trust for Albritton Through Hibernia National Bank, 619 So.2d 1170 (La.App. 1st Cir.1993). No other authority has been shown supporting the trial court's actions in imposing sanctions upon Nickel without finding him in contempt of court. We reverse that portion of the trial court judgment finding Nickel's actions to be sanctionable and ordering him to pay the costs of the contempt hearing.

COURT COSTS AND LEGAL INTEREST
Cooley contends that it should not be condemned to pay any court costs or legal interest. Cooley also claims that it should not have to pay any costs or interest after October 30, 1998, when the trial was recessed for the plaintiffs to continue with discovery. This argument is without merit.
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. The court may render judgment for costs, or any part hereof, against any party, as it may consider equitable, except as otherwise provided by law. La. C.C.P. art. 1920. A trial court has great discretion in determining and allocating court costs. Hunter v. Bossier Medical Center, 31,026 (La.App.2d Cir.9/25/98), 718 So.2d 636. The court shall award interest in the judgment as prayed for or as provided by law. La. C.C.P. art. 1921. Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto," which may be rendered by any of the courts. La. R.S. 13:4203.
During the course of the trial, the possibility was raised that someone other than Ernest Norris was responsible for David's injuries. The trial was recessed by mutual agreement in order for the plaintiffs to pursue that possibility. They were not successful in that quest. Cooley argues that, because the trial was delayed for a long period of time and, ultimately, the plaintiffs uncovered no new information, it should not have to pay costs or legal interest after the trial was recessed for discovery that was not used by the plaintiffs.
The plaintiffs assert that Cooley was properly ordered to pay costs and legal interest. They point out that the recess to *1285 continue discovery was done at the recommendation of defense counsel and that the delay in resuming the trial was caused by efforts to accommodate defense counsel's calendar.
Under the facts of this case, we do not find that the trial court abused its discretion in ordering the defendant to pay costs and legal interest. The recess was entered into by mutual consent. The arguments raised by the defendant that the plaintiffs unduly prolonged the resumption of the trial are not supported by the record. The defendant is the party cast in judgment. Based upon this record, the trial court was correct in its assessment of costs and legal interest.

CONCLUSION
For the reasons stated above, we affirm that portion of the trial court judgment awarding wrongful death damages in the amount of $150,000 each to Olen Clark and Sue Clark for the loss of their son, David Clark.
We amend the trial court judgment to add medical expenses of $267 and funeral expenses of $6,260.68. We further amend to allow recovery for David's survival action in the amount of $35,000, to be equally divided between the plaintiffs.
We reverse and vacate that portion of the trial court judgment finding Olen and Michael Clark to be in contempt of court and ordering them to pay a penalty of $500 each.
We also reverse and vacate that portion of the trial court judgment finding the actions of Milo Nickel to be sanctionable and ordering him to pay the costs of the contempt proceeding.
We affirm that portion of the trial court judgment ordering the defendant, G.B. Cooley Hospital for Retarded Citizens, to pay costs and legal interest in this case. Costs on appeal are taxed to the defendant in accordance with law.
AFFIRMED IN PART, AMENDED IN PART, REVERSED AND VACATED IN PART, AND RENDERED.
NOTES
[1] At the time of this proceeding, Rule of Professional Conduct 3.6 provided in pertinent part:

(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.
(b) A statement referred to in Paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury,....
(c) Notwithstanding Paragraphs (a) and (b)(1-5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:
(1) The general nature of the claim or defense;
(2) The information contained in a public record;
(3) That an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;
(4) The scheduling or result of any step in litigation;
(5) A request for assistance in obtaining evidence and information necessary thereto;....
The rule has subsequently been amended, effective March 6, 2002, by the Louisiana Supreme Court. The amendment has no effect on the case sub judice.