CARAWAY, J.
 

 hln this medical malpractice action arising from the death of a 47-year-old severely mentally challenged man, the trial court granted summary judgment in favor of the defendant developmental care facility due to the lack of expert medical evidence that defendant breached the standard of care. The plaintiffs claim that the defendant was negligent in its supervision, allowing its patient to swallow a foreign object which caused a severe bowel obstruction. Plaintiffs further claim that defendant’s medical treatment for its patient’s bowel obstruction amounted to malpractice. Finding that material fact issues exist from the evidence presented for summary judgment, we reverse and remand for further proceedings.
 

 Facts
 

 The plaintiffs in this malpractice action are C.R. and Martha Gleason, the parents of Donnie Ray Gleason (“Donnie”), a 47-year-old mentally challenged man who resided at the Northwest Louisiana Developmental Center (“Northwest”), an intermediate care facility. Donnie’s medical reports indicate that he had been a resident of Northwest since December of 1974. Donnie was nonverbal and incapable of self-medicating, arranging or monitoring his own medical assistance.
 

 On December 23, 2002, after two earlier unsuccessful attempts, Donnie was transported to Willis Knighton Medical Center (“Willis Knighton”) in Bossier City, Louisiana, to undergo a routine CT scan and EEG after he suffered a seizure while on pass with his parents. Donnie was sedated for the procedures. Upon Donnie’s return to Northwest the same | ¡.afternoon, he was lethargic and placed in the infirmary. A summary of the Northwest Nurses’ Progress Notes from December 25, 2002, report in relevant part:
 

 12:30 a.m. — Donnie began hyperventilating. At this time, the charting nurse reported that she “could not determine last B.M., checked and found high, hard impaction.” A suppository was administered which agitated Donnie.
 

 12:50 a.m. — Skin damp, small amount of brown emesis, lungs clear. Re-positioned. No results from suppository.
 

 1:00 a.m. — Notified Physician’s Assistant. Received order to give enema and call Physician’s Assistant in one hour if no results. May repeat enema.
 

 1:05 a.m. — Enema administered.
 

 1:15 a.m. — Small amount of dark brown emesis; increased respiratory distress. Nurse removed digitally large, hard impaction containing foreign objects. (3 or 4 cord like material approx. 4"-6" long attached to a round object). More palpated higher but unable to reach these. Specimen saved in diaper and placed in lab refrigerator.
 
 [1]
 

 1:25 a.m. — Moderate dark brown emesis. Oxygen mask cleaned and re-applied. Increased respiratory distress.
 

 1:30 a.m. — Physician’s Assistant arrived. Ordered 911 to be called and requested ambulance for respiratory distress.
 

 
 *964
 
 1:40 a.m. — 911 EMS arrived. Moderate amount of dark brown emesis, respira-tions very labored.
 

 2:05 a.m. — 911 EMS removed Donnie to waiting ambulance and transported to Willis Knighton Bossier City.
 

 This documentation shows that Donnie had ingested a foreign object which caused a bowel impaction that precipitated Donnie’s fecal vomiting. Presumably due to his condition, Donnie was unable to expel the vomit and breathed some of the gastric content into his respiratory tract. At Willis |sKnighton, Donnie was placed on a ventilator in the intensive care unit and diagnosed with bowel obstruction, respiratory failure and aspiration pneumonia relating to the vomit aspiration. The medical records show that by January 2, 2003, Donnie was removed from the ventilator. In subsequent days he had “improved significantly” according physician’s notes and was going to be transferred to a step down unit. Unfortunately, however, on January 6, 2003, Donnie once again went into respiratory distress and was placed on the ventilator. Subsequently, Donnie developed further ventilation and lung complications and he was coded. Willis Knighton medical staff were unable to revive him.
 

 The plaintiffs filed a medical malpractice complaint with the Louisiana Patient’s Compensation Fund against Willis Knigh-ton, Dr. Stuart LeBas and Dr. Thomas Rodsuwan
 
 [2]
 
 and Northwest, Dr. Thomas Rodsuwan and Tommy Robinson, P.A. The medical review panel reached a favorable decision for both defendants on December 12, 2006. Specifically regarding Northwest,
 
 [3]
 
 the panel concluded:
 

 The evidence does not support the conclusion that the defendants, NORTHWEST LA. DEVELOPMENTAL CENTER, DR. THOMAS ROD-SUWAN and TOMMY ROBINSON, P.A., failed to comply with the appropriate standard of care as charged in the complaint.
 

 14More specifically, the opinion also noted as follows:
 

 When the patient returned from WK-Bossier, he was under close observation in the infirmary. We find no evidence to suggest that the patient ingested a foreign object while at the NWLDC or its infirmary. In the time period immediately prior to the procedures and following, he had appropriate supervision that ensured the patient would not ingest a foreign object. When he developed respiratory distress we agree with all steps taken to evaluate and treat him. We find this was done in an appropriate and timely manner. We find that each defendant met the standard of care in all instances.
 

 Despite the unfavorable medical review panel ruling, on March 12, 2007, plaintiffs instituted a malpractice suit in district court against both Willis Knighton and
 
 *965
 
 Northwest alleging in part Northwest’s failure to properly supervise Donnie’s medical treatment, to monitor him, to recognize the seriousness of the patient’s condition and inadequate monitoring of the patient’s respiratory status.
 

 On July 22, 2008, Northwest filed a motion for summary judgment on the grounds that plaintiffs had no expert opinion to support their claim that the defendants breached the applicable standard of care. Attached to Northwest’s motion was a copy of the opinion of the medical review panel and copies of the unanswered interrogatories propounded by Northwest to plaintiffs requesting the identity of plaintiffs’ medical expert.
 

 The summary judgment hearing was set for October 20, 2008, continued from an original August date. In a telephone conference between counsel and the court on October 16, 2008, plaintiffs’ counsel requested a second continuance of the hearing which was rejected by the court. The parties agreed that the court would rule without hearing the arguments of counsel. The court ordered that plaintiffs’ opposition and evidence be filed |son October 20, 2008, and allowed defendants until October 24, 2008, to respond. On October 20, 2008, plaintiffs submitted an opposition to the summary judgment and a motion to substitute the executed affidavit because the expert affidavit submitted in opposition to the summary judgment was not signed. Included as exhibits to the opposition was the unsigned affidavit of plaintiffs’ expert, Joanne Gongora, RN, MSN (“Gongora”), a nurse of 32 years. In her affidavit Gongo-ra stated that she had rendered care to clients with health concerns similar to Donnie’s and had experience in treating patients with signs of respiratory distress and the safe administration of enemas. Gongora reviewed the medical records of Northwest and Willis Knighton, interrogatories and documents revealed through discovery and the position paper of Northwest in rendering her opinion. Based upon her review of these items as well as her training and experience, Gongora concluded that Northwest breached the standard of care as follows:
 

 [T]he standard of care was breached by nursing personnel at NWLDC/Rose-wood Infirmary and resulted in Donnie aspirating stomach contents containing fecal matter. It is further her opinion that the standard of care was breached by nursing personnel at Willis Knighton Bossier Health Center that resulted in Donnie experiencing respiratory compromise.
 

 More specifically, Gongora concluded that Northwest breached the standard of care as follows:
 

 • Failure to maintain a safe environment and properly supervise Donnie Gleason and prevent him from swallowing a foreign object(s);
 

 • Failure to properly assess and intervene appropriately for a client with an abdominal obstruction such as Donnie Gleason;
 

 Failure to recognize that the client had aspirated fecal matter;
 

 • Failure to remove restraints in a timely manner while giving an enema even after noting dark brown emesis;
 

 |f* Failure to recognize that Donnie Gleason was in respiratory distress; and
 

 • Failure to notify appropriate personnel regarding obvious deteriorating in the health status of Donnie Gleason.
 

 The court orally ruled on the motion on October 27, 2008, and granted summary judgment in favor of Northwest on the grounds that the unsigned affidavit was insufficient to establish a breach of the duty of care. A judgment memorializing
 
 *966
 
 the ruling was signed by the court on November 12, 2008.
 

 On November 21, 2008, plaintiffs filed a motion for new trial seeking reconsideration of the summary judgment ruling on the grounds of the properly executed expert affidavit which plaintiffs claimed to have received on October 27, 2008. Plaintiffs argued that proof of causation was unnecessary because causation was not made an issue by Northwest or the medical review panel. Nevertheless, plaintiffs argued that the medical records established that Northwest “caused Donnie Gleason to aspirate fecal matter which, along with treatment necessitated by the aspiration, resulted in his death.” Plaintiffs further argued that the breaches in the standard of care by both defendants “in failing to maintain airway patency and adequate oxygen saturation levels resulted in Donnie’s re-intubation that resulted in pneumothoraces and ultimate death.”
 

 Northwest opposed the motion for new trial on the grounds that plaintiffs’ submission of the signed affidavit was untimely. Further, Northwest argued that it was the plaintiffs’ burden to prove causation in a medical malpractice action. The new trial was called to hearing on January 12, 2009. The court heard the arguments of counsel and denied plaintiffs’ 17new trial motion on February 19, 2009, after concluding that the expert affidavit did not establish a causal link between Northwest’s nursing care and the resulting injury. This appeal by Northwest of only the February 19, 2009 denial of new trial judgment ensued.
 
 [4]
 

 On appeal, the plaintiffs argue that the trial court erred in denying a new trial on the grounds that plaintiffs would not be able to bear their burden of proof regarding causation. Specifically, plaintiffs contend that the court needs no additional information apart from the medical records, Gongora’s affidavit and the medical review panel finding to determine causation in this matter. Further, plaintiffs argue that causation was not made an issue either by the medical review panel or defendants’ summary judgment motion.
 

 Discussion
 

 To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.
 
 Samaha v. Rau,
 
 07-1726 (La.2/26/08), 977 So.2d 880;
 
 Tillman v. Eldridge,
 
 44,460 (La.App.2d Cir.7/15/09), 17 So.3d 69. Although causation is not explicitly included among those elements for which proof must be made through expert medical testimony, typically expert testimony is required to prove causation when the resolution of that issue is not a matter of common knowledge.
 
 Id.
 

 A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal
 
 de novo,
 
 with the appellate court us
 
 *967
 
 ing the same criteria that govern the trial court’s determination of whether summary-judgment is appropriate;
 
 i.e.
 
 whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.
 
 Samaha v. Rau, supra.
 

 The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
 

 The burden of producing evidence at the hearing on the motion for summary judgment is on the mover (normally the defendant), who can |9ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion.
 
 Samaha v. Rau, supra.
 

 Initially, regarding the unsigned affidavit of plaintiffs’ expert and the motion for new trial, we will consider the affidavit, now signed, for our
 
 de novo
 
 ruling under these circumstances. In particular, we note that the trial court did not reject altogether consideration of the affidavit at the motion for new trial even though the plaintiffs were clearly delinquent in obtaining the signature of Nurse Gongora for the presentation of their opposition.
 

 Considering plaintiffs’ claims in a broad sense, we find the initial act of the alleged negligence concerns Northwest’s lack of watchful care over this severely disabled individual which allowed him to ingest a “round object” containing gauze. Such a negligence claim, like the entrustment of a minor or incompetent person into the care of a guardian, involves the alleged breach of a duty to protect another from a danger which the party with the disability cannot appreciate. Temporary custodians of children, such as school personnel and day care workers, are charged with the highest degree of care towards the children left in their custody, but are not insurers | ulof the children’s safety; supervisors must follow a standard of care commensurate with the age of the children under the attendant circumstances.
 
 Bell v. USAA Cas. Ins. Co.,
 
 80,172 (La.App.2d Cir.1/21/98), 707 So.2d 102,
 
 writs denied,
 
 98-0712, 98-0766 (La.5/8/98), 718 So.2d 433, 434;
 
 Glankler v. Rapides Parish School Bd.,
 
 610 So.2d 1020 (La.App. 3d Cir.1992),
 
 writ denied,
 
 614 So.2d 78 (La.1993);
 
 Drueding v. St. Paul Fire & Marine Ins. Co.,
 
 482 So.2d 83 (La.App. 4th Cir.1986). Intermediate care facilities which care for the mentally challenged are held to the standard of care applicable to hospitals.
 
 Hunt v. Bogalusa Community Medical Center,
 
 303 So.2d 745 (La.1974);
 
 Clark v. G.B. Cooley Service,
 
 35,675 (La.App.2d Cir.4/5/02, 813 So.2d 1273),
 
 writ denied,
 
 813 So.2d 1273. A hospital is bound to exercise the requisite amount of
 
 *968
 
 care toward a patient that the particular patient’s condition may require. It is the hospital’s duty to protect a patient from dangers that may result from the patient’s physical and mental incapacities as well as from external circumstances peculiarly within the hospital’s control. A determination of whether a hospital has breached the duty of care to a particular patient depends upon the circumstances and facts of the case.
 
 Id.
 
 Therefore, from these principles, this medical malpractice action involves in part
 
 [5]
 
 a claim of ordinary negligence regarding supervisory care where an understanding of the duty or standard of care owed to Donnie does not require medical expertise.
 

 |nThe facts presented in Northwest’s defense of this matter through its motion for summary judgment point out and suggest that plaintiffs cannot prove how or when Donnie ingested the gauze. Northwest also shows that two days before Donnie’s respiratory trauma and the discovery of his bowel impaction, Donnie was in the custody of Willis Knighton on December 23 for the EEG and CT scan procedures he received at the hospital. Nevertheless, from Nurse Gongora’s review of the Willis Knighton and Northwest records for December 23 and for Northwest’s care thereafter, she concluded that Northwest failed to properly supervise Donnie so as to prevent him from swallowing the foreign object.
 

 Our review of the record indicates to us that a material fact issue remains regarding Northwest’s duty to protect Donnie from the danger that could result from his access to an object such as a roll of gauze which the circumstances indicate he may have swallowed. The facts presented in connection with the motion for summary judgment demonstrate that Donnie was primarily in Northwest’s custody in the days leading up to the discovery of the gauze-related impaction on December 25. This circumstantially indicates a possible breach of Northwest’s standard of care for its supervision of its mentally challenged patient. The extent of the custody which Willis Knighton maintained over Donnie on December 23 may be urged by Northwest and weighed in the trial of this matter. However, this summary judgment setting is not appropriate for the weighing of the competing inferences regarding Donnie’s custody by both caregivers preceding the discovery of the impaction on December 25.
 

 | ^Regarding the issue of causation, the bowel impaction clearly caused Donnie’s distress on December 25 resulting in his hospitalization. The plaintiffs’ survival action seeks damages for the pain and suffering Donnie experienced prior to his death. While the causation relating to Donnie’s death is not as clear and will require further medical testimony presented by the plaintiffs, we find that the plaintiffs’ claims overall for the survival and wrongful death actions should proceed to trial. Additionally, the other claim of plaintiffs concerning Northwest’s affirmative acts of medical treatment which it rendered on December 25 may be the subject of a specific motion for partial summary judgment. However, given the con-nexity of plaintiffs’ claims as a whole and the lack of a specific ruling for a partial summary judgment by the trial court, we reverse the trial court’s summary judgment ruling in its entirety.
 

 Conclusion
 

 Finding that material fact issues remain, we reverse the trial court’s grant of sum
 
 *969
 
 mary judgment and remand for further proceedings. Costs of this appeal are assessed to appellee.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . A lab report completed on January 2, 2003, described the foreign object as "apparent light tan gauze material.”
 

 [2]
 

 . Willis-Knighton is not involved in this appeal.
 

 [3]
 

 . Relating to Willis-Knighton the written reasons for conclusion read as follows:
 

 We find that the foreign objects ingested by the patient on or prior to December 25 contributed to his admission to the hospital. However, we find that the foreign objects did not contribute substantially to the events which eventually led to his demise on January 6.
 

 We find the critical care treatment provided by the defendants was timely and appropriate. Specifically, the patient was intubated and ventilated in accordance with the standard of care. The pneumothoraces were discovered and treated in a timely and appropriate fashion.
 

 Concerning efforts for resuscitation, we find that the defendants acted expeditiously and in an appropriate manner.
 

 [4]
 

 . When the motion for appeal refers to a specific judgment denying a motion for new trial yet the appellant exhibits a clear intention (from her brief, argument and evidence as a whole) to appeal instead the judgment on the merits, then the appeal should be considered.
 
 Rose v. Rose,
 
 44,467 (La.App.2d Cir.6/24/09), 2009 WL 1782811.
 

 [5]
 

 . The plaintiffs' claims against Northwest additionally involve the affirmative medical treatment provided to Donnie in the four hours on December 25, 2002, immediately before his respiratory distress which caused his EMS transport to Willis Knighton.