KNOLL, Judge.
Trinilee H. Shackleford, individually and as administrator of the estate of his son, Terry Wayne Shackleford, appeals the dismissal of his suit for damages against the State of Louisiana, Department of Health and Human Resources (DHHR), arising out of the abuse and/or neglect of Terry, a resident at Pinecrest State School (Pine-crest) located in Pineville, Louisiana.
The trial court found that the evidence failed to prove any dereliction on the part of the defendant. Mr. Shackleford contends that the trial court: (1) erred in failing to correctly apply the special duty-risk criteria of Daniels v. Conn, 382 So.2d 945 (La.1980), with respect to mentally retarded patients in the State of Louisiana to the facts of this case; and, (2) committed mani *40 fest error. We reverse, finding that Pine-crest failed to provide proper supervision and care to protect Terry from danger. We do not reach this conclusion under Daniels, supra, which involved a duty-risk analysis in the death of a resident of Pine-crest as a result of an automobile accident. We reach our conclusion under the standard of care Pinecrest owes its patients.
FACTS
Terry is a severely mentally retarded person, with limited understanding, possessing a mental age of 4½ years. His chronological age at the time of trial was 21 years. He has been institutionalized since he was 5 years of age, and has been at Pinecrest since 1971. Terry is approximately 4 feet 2 inches tall, strong and stocky. In addition to being mentally retarded, Terry is a diabetic and hyperactive. As a result of his diabetes he bruises easily and his bones are more susceptible to fracture. The injuries complained of occurred during the latter part of 1978 through the latter part of 1979. Terry was 13 years of age then. Suit was filed in December of 1979, and the case was tried on February 4, 1987.
The record shows that Terry has a long history of multiple injuries on a frequent basis while he was in cottage 313 at Pine-crest, that predate the injuries that initiated this suit. Pinecrest admits these injuries, but denies that the injuries were caused by abuse and/or neglect. The type of injuries include: bruises and knots about the head, face, groin and body; cuts and scratches to his head and body requiring stitches; broken front teeth; a dislocated thumb; a broken wrist and thumb, and black eyes. The record shows that Terry was injured almost daily.
In December of 1978, Terry’s mother was summoned to Pinecrest by Dr. R.L. Robbins, a general practitioner at Pine-crest, because of a thumb injury Terry received; he dislocated his left thumb. Before she left, Dr. Robbins showed her multiple bruises on Terry’s buttocks, hips and legs. Mrs. Shackleford took pictures of these bruises and discussed the matter with Pinecrest personnel, but nothing was done. The record shows that this was not the first time Terry had multiple bruising. Previous to this bruising, Mrs. Shackleford was visiting her son at Pinecrest and saw him limping when he walked. She inspected him and found multiple bruising to his groin. When she saw multiple bruising on Terry’s buttocks, out of concern for her son, she turned the matter over to the Office of Family Services, Division of Child Protection, the Department of Health and Human Resources, since Pinecrest failed to heed her concern.
The Protection Unit, along with the Rap-ides Parish Sheriff’s Office, investigated the matter and rendered a report. The report, dated January 26, 1979, made 5 basic factual conclusions about Terry and his treatment at Pinecrest:
“1. Terry Shackleford had been abused by either an employee or another resident at Pinecrest.
2. The history of trauma to Terry is extensive and suggests a need for a more protective environment for him or closer supervision in his present program.
3. In Terry’s unit some Pinecrest employees were using paddles and brush handles in violation of facility guidelines. In addition, one employee was using der-rogatory language toward Terry and other residents in violation of facility guidelines.
4. In Terry’s unit there were indications that residents were being allowed to discipline other residents with the consent if not at the initiation of staff.
5. The parents are expressing concern about trauma to their child, but they perceive the Pinecrest authorities as being unconcerned about the trauma, responding with denial and cover-up tactics. On the other hand, facility personnel perceive the parents as being agitators, uncooperative in treatment plans and looking for a basis for a lawsuit.”
The record does not indicate that any action was taken by Pinecrest as a result of this investigation, even though the Child Protection Agency report suggested fur *41 ther assessment and observation by the facility to avert future trauma to Terry. After the report was made, Terry continued to receive repeated injuries.
On October 17,1979, Terry was admitted to Huey P. Long Memorial Hospital for treatment of his wrist. He was seen by an orthopedic surgeon, who diagnosed fractures to his thumb and wrist as being approximately 4 weeks old. Shortly after this injury, Mr. Shackleford filed this suit.
STANDARD OF CARE
The standard of care that Pinecrest must follow for its patients is succinctly stated in Meynier v. De Paul Hospital, 218 So.2d 98 (La.1969) at page 102:
“The hospital must exercise the reasonable care toward a patient as the patient’s known condition may require. Plaintiff’s condition and the facts and circumstances peculiarly applicable to this plaintiff on this particular occasion were all well known to the hospital employees who had her in charge. The hospital is liable for the results of the want of ordinary care whether the failure to exercise such care is due to incompetence or nonperformance of duty by the employee. This extends to safeguarding the patient from dangers due to mental and physical incapacity. If the hospital, through its employees, does something which it should not have done or failed to do something which it should have done as the result of negligence or inattention, amounting to less than reasonable and ordinary care of the patient, the hospital must be held liable for the consequences. 41 C.J.S. Hospitals § 8, p. 849, and notes.”
Our research of the standard of care a hospital owes its patients shows that this is still the prevailing view. A “community standard” is not to be applied in determining if a hospital has been negligent under a particular set of facts. Ray v. AmeriCare Hospital, 400 So.2d 1127 (La.App. 1st Cir.1981), writ denied, 404 So.2d 277 (La.1981).
In the case sub judice, Pinecrest does not dispute Terry’s injuries or the frequency that he received injuries. Pine-crest’s position is that it is not responsible for Terry’s injuries because it could not control Terry. The trial court in its reasons for judgment found that Terry presented a disciplinary problem because of his mental disabilities; it further found no dereliction on the part of Pinecrest, and “no actionable negligence”.
After a careful review of the record, we find the trial court clearly erred in not applying the standard of care a hospital owes its patients.
Terry is severely mentally retarded and is not accountable for his actions. Although his chronological age was 21 years at the time of trial, his mental age is 4½ years. Terry’s condition and circumstances peculiarly applicable to him were well known by the employees of Pinecrest. The record shows that Terry was placed in a cottage with much older and larger residents. It was in this cottage that Terry received all the injuries. Plaintiff contends this arrangement contributed to Terry sustaining injuries. Terry was moved after suit was filed and Terry’s circumstances improved. We agree that Terry must have been placed in the wrong cottage since he sustained so many injuries, so frequently. Plaintiff further contends that Terry was victimized by one of the employees at the cottage who was known to beat the patients and was suspended by Pinecrest in 1973. Although this conduct was denied by the employee at trial, the report from the Child Protection Agency raises grave suspicion. However, excluding this complaint, the record is abundantly clear that Terry was placed by Pinecrest in circumstances where he could hurt himself and other residents hurt Terry. He was poorly supervised, and as a result, he was constantly injured. Pinecrest’s medical staff and its employees had full knowledge of the frequency that Terry was injured and failed to take any measures to prevent further injury. Pinecrest is liable for the results of the want of ordinary care, whether the failure to exercise such care was due to incompetence or nonperformance of duty by its employees. Meynier, supra.
*42 QUANTUM
In Mr. Shackleford’s claim for damages for himself, he seeks an award only for past, present and future medical expenses for Terry. No evidence was adduced to support this award, therefore, there is no basis to grant it. Terry seeks damages for: past, present and future pain and suffering; past, present and future mental anguish; and, punitive damages. Punitive damages are not allowed in Louisiana in tort claims, therefore, this item of damages is dismissed.
The only injuries Terry seeks damages for are the bruises about his hip, buttocks and legs, that Dr. Robbins showed Mrs. Shackleford in December of 1978, and, for the fractured wrist and thumb in October of 1979.
The pictures taken by Mrs. Shackleford reflect multiple and deep bruising about Terry’s buttocks, legs and hip. This bruising is not recorded in Terry’s records at Pinecrest, so we are unable to say how he received them, and if the bruises were inflicted all at one time or over a period of time. Because of the gross amount of bruising, it had to produce pain and soreness. Mrs. Shackleford testified that Terry does not exhibit fear or pain in the same way a normal person does. She stated that when Terry is in pain, he becomes extremely hyperactive, aggressive and irritable.
Terry fractured his wrist and thumb in approximately late September of 1979, however, it was not diagnosed until October 17, 1979, at Huey P. Long Memorial Hospital by an orthopedic surgeon, who diagnosed the fractures as approximately 4 weeks old. Dr. Banks, an orthopedic surgeon, visits Pinecrest once a week, and could have treated Terry much sooner, but this was not done. Terry was needlessly subjected to pain.
We find a general damage award of $45,-000 for Terry’s physical and mental pain and suffering adequate.
For the foregoing reasons, the judgment of the trial court is reversed. IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Trinilee H. Shackleford, as administrator of the estate of Terry Wayne Shackleford, and against the State of Louisiana, Department of Health' and Human Resources in the sum of $45,000, together with legal interest from the date of judicial demand until paid. All costs of the trial court and this appeal are assessed to the State of Louisiana through the Department of Health and Human Resources.
REVERSED AND RENDERED.