LOLLEY, J.
| plaintiffs, Shirley Rayford and Jo Sheri Bob Rayford, appeal a judgment by the Second Judicial District Court, Parish of Bienville, State of Louisiana, regarding the amount of damages awarded them against the defendants, Arcadia Healthcare Center, Inc. and Care One Management Group, Inc. (collectively “Arcadia Healthcare”). In response, Arcadia Healthcare has filed an answer to the appeal. For the following reasons, we amend the trial court’s judgment and as amended, affirm.
Facts
Martha Bob Rayford was a patient/resident at Arcadia Healthcare Center, a nursing home in Arcadia, Louisiana, from 1998 until her death on October 11, 2004. Martha’s only two living relatives were her sister-in-law, Shirley, and Shirley’s only daughter (and Martha’s niece), Jo Sheri. On October 27, 2004, Shirley called Arcadia Healthcare to inform personnel there that she was going to visit Martha for Thanksgiving. Shirley lived in Arcadia but Jo Sheri had relocated to Houston, *906 Texas. It was in the course of that telephone call by Shirley that she was informed by nursing home personnel that there would be no holiday visit, because Martha had died sixteen days earlier, and she was already buried.
Shirley and Jo Sheri filed suit.[1] The Rayfords sought specific damages for the costs to disinter, transport to the family grave site in Texas, and rebury Martha, along with general damages for mental anguish and emotional distress associated with the failure by Arcadia Healthcare to 12notify them of Martha’s death and burial. After a trial of the matter, the trial court entered judgment in favor of the Rayfords. Shirley Rayford and Jo Sheri Rayford each were awarded general damages in the amount of $2,500.00 for their mental anguish. Together, the Rayfords received special damages in the amount of $4,813.37 for the disinterment and reburial expense. The Rayfords appeal the judgment as it pertains to the award of general damages, but do not appeal the special damages award. Arcadia Healthcare answers the Rayfords’ appeal.
Discussion
On appeal, Shirley and Jo Sheri raise two assignments of error, both related to the amount of general damages they each individually received. Arcadia Healthcare has answered the Rayfords’ appeal, arguing that the trial court erred in determining a duty existed to the Rayfords to inform them of Martha Rayford’s death and burial and that its exceptions of no right/no cause of action and motions for summary judgment should have been granted.

Duty

This case addresses a possible tort committed by Arcadia Healthcare, for which we have no jurisprudence for guidance.[2] However, despite a lack of judicial authority setting forth such a duty, we agree with the trial court that Arcadia Healthcare indeed had a duty to these particular plaintiffs, the only relatives of the deceased, Martha Rayford, to inform them of her death and burial. Further, in so determining, we conclude that the trial court was |snot in error in denying the exceptions and motions for summary judgment filed by Arcadia Healthcare.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. Beck v. Schrum, 41,647 (La.App.2d Cir.11/01/06), 942 So.2d 669. The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant’s activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. Century Ready Mix Corp. v. Boyte, 42,634 (La.App.2d Cir.10/24/07), 968 So.2d 893, citing Posecai v. Wal-Mart *907 Stores, Inc., 1999-1222 (La.11/30/99), 752 So.2d 762.
Initially, we note that the primary question before us is whether a duty existed by Arcadia Healthcare to inform Martha’s only living relatives of her death; however, we cannot help but wonder whether the more valid question in this case is, “How could there not be a duty to inform Martha’s only living relatives of her death?” Here, when we consider the unique facts and circumstances of this case to determine whether a duty existed, we naturally must give much weight to the moral and social factors involved. First of all, Arcadia Healthcare was operating from a position of ultimate power, authority and knowledge over its elderly (93-year-old) patient, |4Martha. Whereas Arcadia Healthcare took physical care of Martha in the later years of her life, it obviously showed little care or respect for her dignity and personal integrity at the end. It is evident that the existence of Martha’s relatives, especially Shirley, who lived in the same small town of Arcadia, was known by Arcadia Healthcare. Nonetheless, Arcadia Healthcare failed to contact Shirley or Jo Sheri Rayford upon Martha’s death — that is freely admitted. In fact, Arcadia Healthcare made no effort whatsoever to contact either of the plaintiffs — that again is freely admitted. Surely, Martha Ray-ford, a retired professional educator,' deserved to be treated with dignity upon her death and given the type of burial she most probably anticipated having upon her death. Moreover, her relatives, the people who loved her and cared for her as long as they possibly could, deserved to be notified of her passing. It would be implausible for us to imagine how a nursing home would not have a duty to inform a resident’s relatives of the death of their loved one. Notably, we do not believe that imposing such a duty upon a nursing home will result in an unmanageable flow of litigation in the future' — -frankly, because it is inconceivable that many nursing homes would fail in this regard. Imposing such a minimal, basic, and humane duty is not unduly burdensome on the nursing home industry.
Interestingly, Troy Unbehagan, who had been the administrator of the facility during some of the time Martha resided there, received a telephone call from Todd Ford, his successor, to inform him of Martha’s death and discuss Shirley Rayford. Of course, knowledge of that phone call raises the |Kquestion, “If Ford contacted his predecessor to inform him of Martha’s death, why didn’t he contact Shirley or Jo Sheri Rayford to notify them of Martha’s death?”
Finally, the fact that Martha was interdicted and legally under the care of the nursing home is of no significance on this issue. Martha’s interdiction was clearly only due to financial reasons. That purely legal relationship of interdiction did not extinguish the familial relationship and bond that existed between Martha and her only living relatives, Shirley and Jo Sheri. Whereas that legal relationship, the interdiction, ensured that Arcadia Healthcare would be paid for taking care of Martha during the last years of her life, it did not take the place of the emotional relationship and connection with Martha’s family. Because of that strong connection between Martha and her family, Shirley and Jo Sheri, we agree with the trial court that a duty existed by Arcadia Healthcare to these plaintiffs to notify them of their loved one’s death, which duty was .subsequently breached by Arcadia Healthcare. There was no error by the trial court in this regard, and Arcadia Healthcare’s assignment of error is without merit.

*908
Damages

Having concluded that a duty existed to Shirley and Jo Sheri Rayford by Arcadia Healthcare and this duty was breached resulting in liability to the plaintiffs, we now turn to the issue of damages. As stated, Shirley and Jo Sheri were each awarded general damages in the amount of $2,500.00, amounts they argue were insufficient. Specifically, the appellants emphasize the fact that Arcadia Healthcare never showed any contrition for | ^failing to notify anyone of Martha’s death and burial. The Rayfords further argue that Arcadia Healthcare’s callous actions caused them unique and serious mental anguish and emotional distress. They point to the history of their relationship with Martha, arguing that they were close to the decedent.
The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy of the award should be determined by the facts and the circumstances particular to the case under consideration. The standard of review is nonspecific, and only when the award, in either direction, is beyond that which a reasonable trier of fact could assess for this particular injury to this particular plaintiff under these particular circumstances should an appellate court increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Wheelis v. CGU Ins., 35,230 (La.App.2d Cir.12/07/01), 803 So.2d 365. Only after a determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point that is reasonable within that discretion. Youn, supra.
Although we recognize the general rule that damage awards are seldom amended by an appeal court, we conclude that an amendment is warranted in this particular case. Considering the unique facts and circumstances of this situation, we find that the trial court abused its discretion, because we do not believe it adequately considered the deep |7level of grief sustained by Shirley and Jo Sheri upon learning, in such a callous way, that Martha had died. It is evident from the record that both Shirley and Jo Sheri had a close and loving relationship with Martha, especially before her permanent move to the nursing home. Shirley evidently had her own medical problems, along with Martha’s deteriorating medical condition, which led to the eventual and emotionally painful situation of Martha having to be admitted permanently to the nursing home. Despite the fact that Shirley’s and Jo Sheri’s daily involvement in Martha’s life diminished during the tenure of her residency at Arcadia Healthcare, it is clear that their love and connection to Martha had not diminished. Simply because their visits to the nursing home became further apart, it is not fair to assume that their interest or love for Martha subsided, and that the grief they suffered upon her death was not as great. We believe their grief at Martha’s death was further heightened by the disinterested and blasé manner in which Arcadia Healthcare responded to them when Shirley was finally apprised of Martha’s death. So considering, we conclude that the trial court abused its discretion in awarding each plaintiff $2,500.00; however, we do not agree with the plaintiffs that a damage award of $25,000 a piece is warranted. Instead, we amend the general damage award to each plaintiff to $5,000.00.

Offset of Unpaid Fees

Finally, Arcadia Healthcare maintains, in the alternative, that any damages *909 received by Shirley and Jo Sheri Rayford should be offset by the amount allegedly owed ($29,355.93) by Martha for her care at Arcadia | ¡¡Healthcare. Whereas the amount owed by Martha could be considered a succession debt and could be claimed in a succession proceeding should one be commenced in the future, we fail to see how damages awarded in this civil action to Shirley and Jo Sheri Rayford could be offset by the amount owed by Martha for her care, particularly since there was no contractual relationship between Arcadia Healthcare and either plaintiff. The trial court did not err in not offsetting the damage award by the amount allegedly owed by Martha, and this assignment of error is without merit.
Conclusion
For the foregoing reasons, the judgment is amended to increase the amount of general damages to Shirley Rayford to $5,000.00 and the amount of general damages to Jo Sheri Rayford to $5,000.00. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to Arcadia Healthcare Center, Inc. and Care One Management Group, Inc.
AS AMENDED, AFFIRMED.

. Their lawsuit was originally against Willow Ridge Care and Rehabilitation Center, Inc., Pk/a Arcadia Health Care Center, Inc. Subsequently, it was stipulated that the correct defendants were actually Arcadia Healthcare Center, Inc. and Care One Management Group, Inc.

. Notably, this case is not a “nursing home bill of rights” case arising from La. R.S. 40:2010.6, etseq.