# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-9

**INDIA SAM, AS CURATRIX FOR JESSICA CHARLES**

**VERSUS**

**GENESIS BEHAVIORAL HOSPITAL, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2012-6142
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**PHYLLIS M. KEATY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Phyllis M. Keaty, and Van H. Kyzar, Judges.

**Cooks, J., concurs in part, dissents in part, and assigns written reasons.**

**AFFIRMED.**

**Edward J. Marquet**
**Attorney at Law**
**405 West Main Street**
**Lafayette, Louisiana 70505**
**(337) 237-6841**
**Counsel for Plaintiff/Appellant:**
**India Sam, as Curatrix for Jessica Charles**

**Roger E. Ishee**
**Onebane Law Firm**
**Post Office Box 3507**
**Lafayette, Louisiana 70502-3507**
**(337) 237-2660**
**Counsel for Defendant/Appellee:**
**Will Arledge**

**Melvin A. Eiden**
**Rabalais & Hebert**
**701 Robley Drive, Suite 210**
**Lafayette, Louisiana 70503**
**(337) 981-0309**
**Counsel for Defendants/Appellees:**
**Genesis Behavorial Hospital, Inc.**
**Will Arledge**
**Gretchen Kaltenbach**

**Ramon Fonseca**
**Fonseca & Associates, LLC**
**217 Rue Louis XIV, Suite 100**
**Lafayette, Louisiana 70508**
**(337) 456-1163**
**Counsel for Plaintiff/Appellant:**
**India Sam, as Curatrix for Jessica Charles**

**Bobby Moak**
**Attorney at Law**
**Post Office Box 242**
**Bogue Chitto, Mississippi 39629**
**(601) 734-2566**
**Counsel for Plaintiff/Appellant:**
**India Sam, as Curatrix for Jessica Charles**

**KEATY, Judge.**

Plaintiff, a female who was raped at the apartment of another patient receiving services at the same outpatient psychiatric treatment facility that she attended, appeals a judgment granting summary judgment in favor of the two individual owners/officers of the facility and dismissing her claims against them. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 15, 2011, while participating in an outpatient day program run by Genesis Behavioral Hospital, Inc. (Genesis or the facility), Plaintiff, Jessica Charles, was lured off the facility grounds and into the nearby apartment of Dave Carter, Jr., a co-participant in the program, where she was raped and exposed to HIV. Plaintiff[1] filed this suit for damages against Mr. Carter, Genesis, its liability insurer, and the "unknown and yet to be discovered" agents and employees of Genesis whose alleged acts or omissions contributed to Plaintiff's injuries. In an amended petition, Will Arledge and Gretchen Karltenbach, in their respective personal capacities as officers of Genesis, were named as additional defendants.

Mr. Arledge moved for summary judgment, seeking to have the claims against him dismissed on the grounds that in his capacity as a corporate officer of Genesis, he had no personal liability to third persons, such as Plaintiff, for any negligence or fault of the corporation. Shortly thereafter, Ms. Karltenbach filed a motion for summary judgment on the same grounds.[2] Plaintiff opposed both motions. After a contradictory hearing, the trial court signed a Partial Final

---

[1] After the incident at issue took place, Plaintiff was interdicted, and India Sam was appointed as her curatrix. Ms. Sam filed this suit on Plaintiff's behalf.

[2] The pleading filed by Ms. Karltenbach was an exception of no cause of action/motion for summary judgment. Plaintiff's claims against Ms. Karltenbach were dismissed pursuant to the trial court's grant of summary judgment, which effectively mooted the exception. For purposes of this appeal, we will treat the pleading as simply a motion for summary judgment.

Judgment granting the motions for summary judgment filed by Mr. Arledge and Ms. Karltenbach, dismissing Plaintiff's claims against them with prejudice. Plaintiff now appeals, asserting that:

1. The Trial Court committed reversible error of law by applying the wrong standard for determining officer liability. The Trial Court failed to apply the proper criteria set forth in *Canter v. Koehring*,[3] and progeny.

2. The Trial court committed reversible error by failing to find a genuine dispute as to whether Will Arledge or [Gretchen] Karltenbach owed only administrative duties to Genesis Behavioral Hospital, or whether they had undertaken a duty of safety to its patients including Jessica Charles.

## DISCUSSION

"Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). On de novo review, "there is no deference to the trial judge's legal findings, and we make an independent review of the evidence in determining whether there is no genuine issue of material fact and whether the mover is entitled to judgment as a matter of law under La.Code Civ.P. art. 966." *Bridges v. Cepolk Corp.*, 13-1051, p. 10 (La.App. 3 Cir. 2/12/14), 153 So.3d 1137, 1145, *writ denied*, 14-901 (La. 8/25/14), 147 So.3d 1117. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko*, 94 So.3d at 755.

---

[3] *See Canter v. Koehring*, 283 So.2d 716 (La.1973).

2

According to La.Code Civ.P. art. 966(D)(1):

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Louisiana Code of Civil Procedure Article 967(B) further provides:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 8 (La. 3/10/06), 923 So.2d 627, 633.

> [T]o determine whether liability exists under the facts of a particular case, our court has adopted a duty-risk analysis. Under this analysis plaintiff must prove:
>
> > (1) the conduct in question was the cause-in-fact of the resulting harm
>
> > (2) defendant owed a duty of care to plaintiff
>
> > (3) the requisite duty was breached by the defendant
>
> > (4) the risk of harm was within the scope of protection afforded by the duty breached.
>
> Whether a duty is owed is a question of law. Whether defendant has breached a duty owed is a question of fact.

*Mundy v. Dep't of Health & Human Res.*, 620 So.2d 811, 813 (La.1993) (citations omitted). "The duty issue may be appropriate for resolution by summary judgment." *Parish v. L.M. Daigle Oil Co., Inc.*, 98-1716, p. 2 (La.App. 3 Cir.

6/23/99), 742 So.2d 18, 20. "Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties." *Rayford v. Willow Ridge Care & Rehab. Ctr., Inc.*, 43,377, p. 3 (La.App. 2 Cir. 8/13/08), 988 So.2d 904, 906. "Generally, there is no duty to protect others from the criminal activities of third persons." *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364, 1371 (La.1984).

A corporation is a juridical person, an entity with a personality that is distinguishable and distinct from its members. La.Civ.Code art. 24. According to La.R.S. 12:226(A):

> Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

The general rule is that "[a] shareholder of a corporation is not personally liable for the acts or debts of the corporation." La.R.S. 12:1-622.

In *Carter v. State, Department of Transportation & Development*, 45,506 (La.App. 2 Cir. 8/11/10), 46 So.3d 787, the plaintiff filed suit against the president of a corporation for damages sustained by her husband in an accident in which the truck he was driving collided with a tractor-trailer owned by the corporation. The plaintiff alleged that the corporation's president was:

> [P]ersonally liable for the accident because he conducted a negligent inspection of the tractor-trailer and determined that the vehicle was roadworthy when it was not, made the negligent decision to instruct his employee to drive the vehicle from the auction yard to his wrecker yard at night and negligently entrusted the vehicle to an unqualified driver.

*Id.* at 789. The trial court granted the corporate president's motion for summary judgment, dismissing him as a defendant. On appeal, the second circuit affirmed.

4

In doing so, it reviewed the following principles of Louisiana statutory law and

jurisprudence:

> It is well settled that a corporation is a distinct legal entity, separate from the individuals who comprise it. The primary economic purpose underlying this framework of limited liability is the encouragement and promotion of business and industry.

> Additionally, minimizing shareholder liability encourages business investments in high-risk areas by enabling investors who utilize the corporate form to make capital contributions to corporations while insulating their personal wealth from the risks inherent in business. No matter the size of the business, incorporation is an optional form for conducting business in Louisiana and even a single individual may incorporate.

> Due to the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligations.

> In a few limited situations, however, a litigant can reach an individual shareholder by ''piercing the corporate veil,'' thereby rendering the individual liable for the debts incurred by the corporation. If an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation. If directors and officers of a corporation do not purport to bind themselves individually, however, they do not incur personal liability for debts of the corporation except for acts of fraud, malfeasance or criminal wrongdoing.

> Regardless of the basis for piercing the corporate veil, the situation must be viewed with regard to the totality of circumstances in each case. Whether imposition of individual liability is justified under particular circumstances is primarily a factual finding to be made by the trial court.

*Id.* at 791-92 (citations omitted).

*Carter* cited with approval *Canter*, 283 So.2d at 721,[4] the 1973 opinion in which the supreme court listed the following criteria which must be satisfied to impose individual liability on a corporate officer to a third person:

1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.

2. This duty is delegated by the principal or employer to the defendant.

3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

*Canter* was a wrongful death suit brought by the heirs of an employee killed at work when part of a large crane being used to lift a vessel collapsed and fell on him. In reinstating a judgment rendered by the trial court in favor of the plaintiffs and against the defendant engineers employed by the owner of the vessel, the supreme court held that a duty of care that an employer owes to third parties, such

---

[4] *Canter* was a wrongful death suit brought by the heirs of an employee killed at work when part of a large crane being used to lift a vessel collapsed and fell on him. Therein, the supreme court reinstated a judgment rendered by the trial court in favor of the plaintiffs and against the defendant engineers employed by the owner of the vessel, finding the engineers liable to the plaintiffs.

as co-employees, can be delegated to an officer who may be held personally liable for breach of that duty. The facts in that matter showed that there was "substantial factual evidence in the record upon which the trial jury could reasonably base a finding" that the engineers should have relayed to the decedent's employer correct information about not overloading the cranes. *Id.* at 724.

Given that we must conduct a de novo review of the evidence offered in support of and against the motions for summary judgment filed by Mr. Arledge and Ms. Kaltenbach, we need not address Plaintiff's assignments of error individually, but rather, we will discuss them as necessary in our discussion of whether Mr. Arledge and/or Ms. Kaltenbach met the burden of proving the absence of genuine material facts such that they were entitled to summary judgment as a matter of law.

The basis of Mr. Arledge's motion for summary judgment was that, as an officer of Genesis, a registered Louisiana corporation, he owed no duty to third persons, such as Plaintiff, and bore no personal liability for the negligent acts or omissions of Genesis or its employees. Ms. Kaltenbach's motion for summary judgment essentially mirrored that of Mr. Arledge.

In the memoranda she filed in the trial court in opposition to the motions for summary judgment, Plaintiff argued that "Genesis owed a duty to its patients to exercise the necessary care that the patient's particular condition required, including protecting the patient from dangers which might result from the patient's mental incapacities and from external circumstances peculiarly within the hospital's control." (Emphasis omitted.) According to Plaintiff, Mr. Arledge and Ms. Kaltenbach, in their capacities as Chief Financial Officer (CFO) and Chief Operations Officer (COO) of Genesis, were responsible for carrying out Genesis's duties to its patients, and that such "responsibility served as a duty . . . to protect

7

[Plaintiff] from the predictable risks of being harmed by another patient." Moreover, Plaintiff contended that Mr. Arledge and Ms. Kaltenbach breached the duties they owed to her by failing to implement or enforce any policy to protect her from other patients at the facility.

The evidence submitted in support of and in opposition to the motions for summary judgment consisted of the depositions of Mr. Arledge and Ms. Kaltenbach,[5] as well as an affidavit from Plaintiff's attorney attesting to the fact that Genesis is a licensed corporation, and copies of Genesis' responses to discovery propounded to it by Plaintiff. That evidence revealed that Genesis is an active business corporation in good standing with the Louisiana Secretary of State and of which Mr. Arledge is the President/Director. Mr. Arledge owns fifty-one percent of Genesis; the remaining forty-nine percent is owned by Ms. Kaltenbach.

According to Mr. Arledge's deposition testimony, he received a degree in accounting from Louisiana Tech University in 1987. In his capacity of CFO of Genesis, Mr. Arledge's role was "[p]rimarily anything having to do with financial, overseeing payroll, Medicare/Medicaid billing, private insurance billing, collections, accounts payable, receivables, things like that, budgeting forecasting, acquiring finances."

According to Ms. Kaltenbach's deposition testimony, she received an associate degree in nursing from Louisiana State University-Eunice and was a registered nurse who served as the COO and Nursing Administrator of Genesis. Ms. Kaltenbach explained that Genesis is monitored by the Department of Health and Hospitals (DHH) and serves Medicare patients who qualify for its services. Genesis operates several facilities that provide either inpatient or outpatient

---

[5] Mr. Arledge was deposed in 2003, and Ms. Kaltenbach was deposed in 2017.

treatment. The Lafayette facility that Plaintiff was attending at the time of this incident provided only outpatient services to its clients, and no security was provided.[6] Ms. Kaltenbach stated that the facility offered a day program that provides "medication monitoring, doctor visits, group therapy, and some life skills" to qualified Medicare participants while allowing them to reside at their home in the evenings. Participation in the program at the facility was completely voluntary by individuals who were at least eighteen years of age. Ms. Kaltenbach referred to the participants as clients rather than patients. Ms. Kaltenbach stated that she was familiar with Plaintiff because she had received inpatient and outpatient treatment from Genesis' facilities "on and off" for several years. Because Plaintiff did not drive, she used transportation provided by Medicaid to get to the facility. Ms. Kaltenbach described Plaintiff as "a very mildly retarded young woman" with schizophrenia and bipolar disorder. When asked whether Genesis had received any information that Mr. Carter posed a threat to himself or others, Ms. Kaltenbach answered, "No."

Neither Mr. Arledge nor Ms. Kaltenbach were at Genesis when the events made the subject of this lawsuit occurred on November 15, 2011. According to Mr. Arledge's deposition testimony, when he arrived at the facility that afternoon, the staff informed him of what had transpired, and he asked the staff to prepare a written report of the incident. He explained that after an incident occurred at Genesis, a meeting was usually held to review how the situation was handled and whether anything could be done in the future to prevent a similar incident from occurring in the future.

We conclude that both Mr. Arledge and Ms. Kaltenbach met their initial burden of proving their entitlement to summary judgment based upon the general

---

[6] Ms. Kaltenbach stated that security was provided at the Genesis' inpatient facility.

9

rule that a corporation's shareholders are "not personally liable for the acts or debts of the corporation." La.R.S. 12:1-622. Thereafter, the burden shifted to Plaintiff, as she would have the burden of proof at trial, to show that the corporate veil was pierced such that Mr. Arledge and/or Ms. Kaltenbach could be held personally liable to her for the injuries that she suffered in this matter. To do so, Plaintiff had to prove that Genesis owed a duty to Plaintiff, that Genesis delegated that duty to Mr. Arledge and/or Ms. Kaltenbach, and that Mr. Arledge and/or Ms. Kaltenbach breached that duty through their personal fault. *See Canter*, 283 So.2d 716. As the supreme court noted in that regard, a corporate officer's breach of duty delegated to him by the corporation:

> [O]ccurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

*Id.* at 721. It bears repeating that:

> With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer . . . simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.

*Id.*

Plaintiff contends that Genesis owed a duty to its clients to provide them with adequate safety and supervision while on its premises and that Genesis should have implemented a policy to protect her from being harmed by another client. In that regard, Plaintiff argues that because she had a known propensity to wander, Genesis had a duty to protect her from Mr. Carter's actions. Even were we to assume that Genesis owed a duty to protect Plaintiff while she was at the facility,

10

Plaintiff has not proven that any such duty would extend when she was off the facilities' premises. Moreover, even were we to find that such a duty existed, Plaintiff has not proven that such a duty would encompass the risk that she would be assaulted by a third party such as Mr. Carter. *See Harris*, 455 So.2d 1364.

Plaintiff fails to offer any evidence that any duty Genesis may have owed to Plaintiff had been delegated to Mr. Arledge and Ms. Kaltenbach. Nevertheless, Plaintiff submits that the facts indicate that Mr. Arledge and Ms. Kaltenbach somehow assumed a personal/independent duty to Plaintiff because they knew of the potential hazard posed by Mr. Carter, and they had the authority to prevent the harm to Plaintiff but failed to do so. Alternatively, Plaintiff suggests that Mr. Arledge and Ms. Kaltenbach each undertook the duty to supervise her, but failed to adequately do so. Plaintiff's arguments in support of Mr. Arledge and/or Ms. Kaltenbach having assumed a personal duty toward her are not persuasive. As noted in *Carter*, 46 So.3d at 792, piercing the corporate veil should only occur in "exceptional circumstances." With regard to Mr. Arledge, Plaintiff contends that his request that the Genesis staff prepare a written report of the incident exceeded what was called for by his administrative duties, so much so that it indicated that he had undertaken a duty to prevent such incidents. We disagree. Documenting an incident involving several of Genesis' clients indicates nothing more than what can be expected of a prudent businessman. No evidence has been offered to show that Genesis, much less Mr. Arledge, individually, assumed a duty to prevent similar off-campus incidents from occurring in the future.

Plaintiff submits that the facts pointed even more heavily in favor of a finding that Ms. Kaltenbach assumed a personal duty to protect the facilities' clients from one another. Plaintiff argued that as the COO and Nursing Administrator of Genesis, Ms. Kaltenbach assumed a duty of care to all its clients,

11

including Plaintiff. More specifically, Plaintiff submitted that Ms. Kaltenbach knew that psychiatric patients could act violently and that it was common for people with chronic mental illness to have had "some sort of police involvement." We find no merit to Plaintiff's argument. First of all, even if Ms. Kaltenbach handled the clinical aspects of the facility and had some personal contact with the clients, Plaintiff offered no evidence to support her contention that Ms. Kaltenbach assumed a duty to protect clients from assaults from other clients. No security was provided at the out-patient Lafayette facility. It would be nonsensical to find that a corporate officer such as Ms. Kaltenbach assumed a personal duty to provide a service beyond that offered by the corporation. In addition, Plaintiff offered no evidence to show that Mr. Carter had acted violently in the past, and Ms. Kaltenbach specifically denied having any knowledge that he posed a threat to others. Accordingly, the evidence provides no support for Plaintiff's claims that Genesis, much less Ms. Kaltenbach, individually, assumed a duty to prevent a client from suffering an unexpected act of violence from another client while off premises. Thus, Plaintiff has failed to satisfy any of the *Canter* criteria for imposing personality liability upon Mr. Arledge and/or Ms. Kaltenbach.

After having completed a de novo review of the summary judgment evidence, we are convinced that the totality of the circumstances in this matter fail to present any unique circumstances to support Plaintiff's argument that the corporate veil should be pierced such that Mr. Arledge and Ms. Kaltenbach can be held personally liable for the damages she suffered after being assaulted while off the Genesis premises. Accordingly, we will affirm the summary judgments rendered in their favor.

12

**DECREE**

For the forgoing reasons, the judgment of the trial court granting summary judgment in favor of Will Arledge and Gretchen Kaltenbach and dismissing all claims against them with prejudice is affirmed. All costs of this appeal are assessed against Jessica Charles, by and through her curatrix, India Sam.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

18-9

INDIA SAM AS CURATRIX FOR JESSICA CHARLES

VERSUS

GENESIS BEHAVIORAL HOSP. ET AL.

COOKS, J., Concurs in part, and dissents in part.

Jessica Charles (Jessica) is a forty-two-year-old, mentally handicapped individual who functions with the understanding of a four to nine-year-old special needs child. A psychological report by Alfred E. Buxton (Buxton), Ph.D., Clinical Psychologist, contained in Jessica's medical history, states:

> [Jessica's] age equivalencies [are] 4 years and 10 months in communication skills; 9 years 0 months in daily living skills; and 9 years 2 months in social skills. The adaptive behavior composite age equivalency score estimate with communication skill deficits was estimated at 7 years 1 month and with exclusion of communication skill deficits was estimated at 9 years 1 month.

While she was a patient at Defendant's outpatient psychiatric facility Jessica was raped off-cite by another patient receiving treatment at the facility. Plaintiff alleges she was forcibly taken from the facility by her attacker. Defendant alleges she was voluntarily present for treatment and wandered away by her own accord. The majority says she "was lured off the facility grounds and into the nearby apartment of Dave Carter, Jr. (Carter)." It is undisputed that she was raped and exposed to HIV. It is undisputed that she has the mind of, at best, a nine-year-old child. The deposition testimony of witnesses working at the facility submitted at summary judgment state no staff member saw when or how Jessica left the facility but another "client"—patient—at the facility reported she was seen leaving with

1

Carter. When the staff went to search for Jessica she was walking up the street toward the facility returning from her attacker's apartment.

Plaintiff sued Genesis Behavioral Hospital, Inc. (GBH) and its insurer and later amended her petition to sue Gretchen Kaltenbach (Kaltenbach) and William Arledge (Arledge) individually. Arledge testified in deposition he is fifty-one percent owner and Kaltenbach is forty-nine percent owner of GBH. Arledge says he is the Administrator and Chief Executive Officer (CEO) and Kaltenbach is the Chief Operating Officer (COO) and Director of Nursing who handles "more day-to-day operations [and] clinical aspects." According to Arledge, *GBH is licensed by the State of Louisiana as a hospital subject to the authority of the Department of Health and Hospitals (DHH) and Genesis' Lafayette psychiatric facility is operated under that hospital's provider number.* The Lafayette psychiatric care facility is classified as a Partial Hospital Program/Intensive Outpatient Program (PHPIOP). Genesis has an average of forty outpatients a day at this outpatient clinic. According to Kaltenbach's deposition testimony, *she is educated as a Registered Nurse with a specialty in psychiatry.*

Arledge filed a motion for summary judgment based on his assertion that he has no personal liability to third persons for any negligence or fault of the corporation. He asserts his role in the corporate structure is limited to financial matters. Kaltenbach also filed a motion for summary judgment adopting Arledge's arguments. After a hearing on the motions for summary judgment the trial court granted both motions dismissing Arledge and Kaltenbach individually from the suit with prejudice. The majority affirms the trial court ruling. I agree with the majority's opinion as to Mr. Arledge, but I strongly disagree with the granting of summary

2

judgment dismissing Plaintiff's claims against nurse Kaltenbach for personal liability regarding her alleged negligent conduct.

Nurse Kaltenbach testified she has known Jessica as a patient for many years and is very familiar with her history which includes the following information contained in Jessica's medical chart/medical history. According to the deposition testimony of Catherine McDonald (McDonald), Ph.D., Jessica was previously hospitalized as an inpatient. She was found "wandering the streets at 4:00 in the morning and had violent behavior at home with [her] elderly parents. She was non-compliant with her medication." She further testified "according to Mr. Buxton's report, Jessica had a history of both visual and auditory hallucinations…" "She acknowledged two hand passive suicidal ideation…" McDonald stated Jessica had a history of Schizoaffective Disorder and had previous behavior such as "running around with a knife in a vacant house and had made threats with a knife." "She was brought to Opelousas General on numerous occasions by the police." A 2011 discharge summary from GBH refers to her behavior as "**childlike,** compulsive and impulsive." (emphasis added)

Willie Young, an employee of GBH, testified in deposition that it is the responsibility of all Genesis staff/personnel to know the whereabouts of the participants and "insure their safety." He stated that if someone was at the front desk when Jessica and Carter left the facility they would not have allowed them to leave. Heather Briggs, also an employee of GBH, testified that techs and staff are supposed to be with the patients monitoring them, and keeping an eye on all of them, at all times. Arledge, however, testified in his deposition that no one is assigned to monitor the front door. According to him, Genesis is an outpatient clinic and any patient can leave out the door or anyone off the street can come in.

Contradictory to the staff's assertions, Kaltenbach testified in her deposition that she is "a nurse, not a security guard…" She said Genesis had no security measures to keep mentally handicapped patients from wandering off or leaving "voluntarily." She says it is not "regulated, it's not mandated, it's not necessary" to have security measures in place to prevent patients like Jessica from leaving the facility without anyone knowing. She explained that roll call for group sessions was taken four times a day. When asked what happens when a patient like Jessica is "not present during roll call for a group what—what would you say the protocol is to responding (sic) to that situation," Kaltenbach responded: "I mean it would be she could be with another social worker, she could be with a doctor, she could be at a doctor's appointment, you know, the—*we would eventually, you know, say hey*, Jessica wasn't in my group today, were ya'll with her" (emphasis added). She says the roll calls are to make sure staff charts who participates in a group session. When asked if these charts are submitted to Medicaid for reimbursement she responded: "Yes." Under continued cross examination she further clarified her response (emphasis added):

Q. Okay, so the purpose really is to make sure y'all are being paid for the time spent.?

A. No, the purpose is to make sure that the—that the clinicians are charting on the people that were in their group.

Q. Uh-huh (yes)

A. And not charting on someone who wasn't in their group

Q. Right. But—

A. **It's a quality assurance measure—**

Q. Not—

4

A. –**to make sure there's no billing errors**.

Q. But not a safety measure.

A. **Not a safety measure, no**.

When asked if it would be difficult to have such a policy in place as a safety measure she answered "No." She also said it was other patients who noticed Jessica left with Carter and reported that to staff. Kaltenbach further testified she knew the family reported there had been outside contact between Jessica and Carter.

The majority opines that personal responsibility/liability for Kaltenbach's negligent tortious conduct as a *Registered Nurse specializing in psychiatric work* is shielded by a corporate mantle of protection unless Plaintiff can pierce the corporate veil. This conclusion misses the point entirely and, for lacking a better word, wrong. Were this correct, every doctor, medical care provider, lawyer or other licensed professional could avoid all personal exposure for their tortious conduct by simply incorporating and pointing every plaintiff to the corporate entity as their shield for their own tortious, negligent conduct. We are not called upon at this stage to determine whether nurse Kaltenbach's personal liability ultimately might be subject to other statutory provisions limiting the amount of her exposure or holding the corporation vicariously liable. It certainly does appear, based on the evidence presented at summary judgment, GBH may have tremendous exposure for liability to Jessica.[1] But that does not mean nurse Kaltenbach cannot have personal liability

---

[1]

A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care to a particular patient depends upon the circumstances and the facts of the case. *Jones v. State Through Department of Health and Hospitals, supra.*

5

for violating her personal duties to Jessica. Plaintiff has put forth more than sufficient evidence to establish there are many genuine issues of material fact regarding nurse Kaltenbach's personal liability for her alleged negligent conduct. The trial court and the majority reach their decision based on the concept that as a matter of law Kaltenbach is entitled to dismissal on summary judgment because Plaintiff fails to put forth evidence to show she can pierce the corporate veil of protection for the owners' and officers' liability for actions/inactions of the corporation. But such a showing has no bearing on the question of whether nurse Kaltenbach may have personal liability for her alleged negligent behavior. The majority relies on the decision in *Canter*, but I believe the majority ignores the finding in *Canter* and other jurisprudence, including decisions by this court, regarding the determination of whether and when the law imposes personal liability for personal actions of corporate officers, directors and/or shareholders.

---

*Clark v. G.B. Cooley Serv.*, 35,675 p.6 (La.App. 2 Cir. 4/5/02), 813 So.2d 1273, 1278.

> Notably, in *Cooley*, the court also observed that whether or not the facility described as a hospital was in reality a hospital or school, the distinction is of no moment, as **any facility caring for mentally handicapped individuals "at least has the duty to provide reasonable care to protect" such individuals from harm.** *Id*. at 1279 (emphasis added).

> **Intermediate care facilities which care for the mentally challenged are held to the standard of care applicable to hospitals**. *Hunt v. Bogalusa Community Medical Center,* 303 So.2d 745 (La.1974); *Clark v. G.B. Cooley Service,* 35,675 (La.App.2d Cir.4/5/02, 813 So.2d 1273), *writ denied,* 813 So.2d 1273. A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care to a particular patient depends upon the circumstances and facts of the case.

*Gleason v. Louisiana Dep't of Health & Hosps.*, 44,947 p. 10 (La.App. 2 Cir. 3/10/10), 33 So.3d 961, 967–68, *writ denied,* 10-783 (La. 6/25/10), 38 So.3d 338 (emphasis added).

6

I admit from the outset that this area of the law has its share of confused understandings, but I will endeavor to shed light on the subject and hopefully keep us from adding to that confusion with the help of legal scholars, fellow appellate jurists and justices of our supreme court.

> **The law is settled that if an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation. Article 2315 Civil Code;** *Canter v. Koehring Company,* **La., 283 So.2d 716 (1973);...." (Other citations omitted.)**
> *Donnelly v. Handy,* **415 So.2d 478, 481 (La.App. 1 Cir.1982).**

*Guillory v. Broussard*, 15-888 p. 22 (La.App. 3 Cir. 5/18/16), 194 So.3d 764, 781, *writ denied*, 16-1707 (La. 11/29/16), 210 So.3d 806. *See also*, *H.B. Buster Hughes, Inc. v. Bernard*, 318 So.2d 9 (La.1975).

In *Laurents v. Louisiana Mobile Homes, Inc.*, 96-976 pps. 13-14 (La.App. 3 Cir. 2/5/97), 689 So.2d 536, 543-44, a panel of this court, relying on the reasoning in *Canter* and subsequent cases, explained the basis of determining a *corporate officer or agent's individual liability* to an injured third party:

> [The officer or agent] must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

> In the instant case, LMHI owed a duty to the plaintiffs to refrain from engaging in unfair or deceptive acts or practices in connection with selling them a mobile home. The breach of this duty caused the damage for which recovery is sought. This duty was delegated to Mr. Reid, LMHI's general manager. The trial court found the following fault by Mr. Reid: telling the plaintiffs that it would take a month to manufacture the mobile home; telling the plaintiffs that they had to accept the mobile home because it was just what they had ordered; and

refusing to return the deposit when the plaintiffs rejected the mobile home. These facts support a finding that Mr. Reid breached the duty of care through personal fault. Thus, we find no manifest error in the trial court's finding that Mr. Reid is personally liable for the judgment.

In the present case, nurse Kaltenbach, as the trained professional in charge of Jessica's care, owed a duty to Jessica, heightened by Jessica's childlike mental capacity (despite her chronological age). *See*, *Shackleford v. State Through Dep't of Health & Human Res.*, 534 So.2d 38, 41 (La. Ct. App.1988), *writ denied*, 536 So.2d 1218 (La.1989) and *Clark v. G.B. Cooley Serv.*, 35,675 (La.App. 2 Cir. 4/5/02), 813 So.2d 1273. Nurses are subject to the same standard as physicians:

> A nurse who practices her profession in a *particular specialty service* owes to her patients the duty of possessing the degree of knowledge or skill ordinarily possessed by members of her profession actively practicing in such a specialty service under similar circumstances. It is the nurse's duty to exercise the degree of skill ordinarily employed, under similar circumstances, by members of the nursing profession in good standing who practice their profession in the same specialty service and to use reasonable care and diligence, along with his/her best judgment, in the application of his/her skill to the case. Nurses who perform medical services are subject to the same standards of care and liability as are physicians. *Cangelosi v. Our Lady of Lake Medical Center,* 564 So.2d 654 (La.1989); *Ewing v. Aubert,* 532 So.2d 876 (La.App. 1st Cir.1988), writ denied, 551 So.2d 1333 (La.1989).

*Gibson v. Bossier City Gen. Hosp.*, 22,693 (La.App. 2 Cir. 11/26/91), 594 So.2d 1332, 1341–42.

Kaltenbach, by her own admission, made no effort to safeguard Jessica despite the fact that she says she was well aware of Jessica's medical history. She knew Jessica is prone to wander and to engage in dangerous behavior. She knew Jessica has the mental capabilities of a young child with special needs. She knew Carter had established a connection with Jessica and that Jessica is not capable of understanding the meaning of that connection or able to reason with Carter as an adult. Despite knowing all these facts Kaltenbach did nothing to make sure Jessica

was not left alone or afforded an opportunity to either wander away from the facility, be "lured" away by someone, as the majority finds, or be forcibly taken away as Jessica alleges. Instead, Kaltenbach maintains Genesis has no policy in place to keep a close watch over patients like Jessica and maintains that she is "a nurse not a security guard." Indeed, Kaltenbach *is a nurse*, and by her own testimony **is a registered nurse with a speciality in psychiatric care.** As the director of nursing in charge of Jessica's care Kaltenbach owed a personal duty to Jessica, breach of which results in personal liability to her tort victim. She is not shielded from personal liability for her tortious acts by virtue of her corporate position. *Kaltenbach does not maintain that she fulfilled her duty to Jessica, nor does she maintain that she delegated this responsibility to others at Genesis.* Instead, she says that no one there had any responsibility to stop Jessica from "voluntarily" leaving or even to know that she was gone until someone "eventually" might have realized Jessica was gone. Her only concern was that GBH would be unable to bill for services for any group session Jessica missed.

Kaltenbach's responsibility to Jessica as a patient under her care was not delegated with due care, or for that matter with any sort of care, to a responsible staff member so as to shield Kaltenbach from personal liability. By her own admission, *it was not delegated at all*, and her only defense presented at summary judgment was to declare "[she is] not a security guard" and no procedure was necessary. Yet the law imposes a high level of responsibility on nurse Kaltenbach for Jessica's safety and wellbeing while under her care. As a registered nurse and the director of nursing for this facility, Kaltenbach had a duty to: "exercise the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable

9

care and diligence, along with his or her best judgment, in the application of his or her skill to the case." *Odom v. State ex rel. Dep't of Health & Hosps.*, 98-1590 p. 2 (La.App. 3 Cir. 3/24/99), 733 So.2d 91, 96. Additionally, because Kaltenbach knew that Jessica's mental abilities are limited to that of a child between the ages of four and nine and she was a temporary custodian of such a mentally handicapped person, she is "charged with the highest degree of care towards [such a person] left in [her] custody. . ." and as a supervisor she is legally obligated to "follow a standard of care commensurate with the age of the [person] under the attendant circumstances." *Id.* Kaltenbach owed a personal duty to treat Jessica as she would a four-year-old child in certain respects or a nine-year-old child in other regards entrusted to her care while at the facility.

I believe the following law review article helps to explain why Kaltenbach cannot hide behind the corporate veil of GBH for her personal tortious actions that resulted in injury to Jessica.

> Corporation law protects shareholders from personal liability for tort obligations in the same way that it protects them from liability for contract debts. It creates a legally separate and distinct person that essentially substitutes for the true human owners in the roles that they might otherwise play as the direct proprietors or partners in the business. Any liability that would otherwise be imposed on the shareholders in their ownership capacities, i.e., as principals on corporate contracts or as liability-bearing masters for the torts of corporate employees, is instead imposed on the legally-distinct corporation. As long as the corporation's separate personality is respected, i.e., its veil is not pierced, shareholders will not bear any liability for these obligations because they are considered to be the obligations of some other, separate person-the corporation.

> *The effects of the separate personality theory are not unlimited, however.* Separate personality means that corporate debts are not treated as personal debts of the corporation's shareholders, *but it does not mean that shareholders or other corporate participants have immunity from personal liability for their own personal torts.* **A shareholder has no more right to commit a tort for a separate corporate person than he has to commit the same tort for himself**

**or others.** Absent immunity, justification, or privilege, if the conduct is tortious, then the tortfeasor is personally liable. **The fact that the tortfeasor happens to be a corporate shareholder, officer, agent, or employee is irrelevant . . .**

. . . .

Certainly, if a corporate officer, driving a corporate automobile on corporate business, negligently runs a stop sign and strikes a pedestrian who is lawfully in the intersection, then that officer has violated his personal tort duty to operate the automobile with due regard for the safety of pedestrians. However, if the same officer "negligently" lets one of the corporation's contracts sit idle on his desk for several months, or "negligently" ships inferior goods in his efforts to fulfill the contract, then the law cannot treat these instances of personal carelessness as if they were personal torts by the corporate officer without overriding normal principles of contract and agency law, which are designed to protect the officer from liability. . . .

. . . .

The separate personality of a corporation is important only in protecting a shareholder against the liability that would otherwise arise out of the shareholder's status as an owner of the business. *If ownership alone is not the source of the shareholder's liability, then the separate personality theory has little application.* **The separate personality of a corporation can no more protect a shareholder against liability for the shareholder's own personal conduct than can the separate existence of his mother, spouse, or neighbor.** If the **shareholder personally commits a tort** or personally signs a contract without disclosing his agency, **he becomes personally liable without regard to whether some other person, either his corporation or his neighbor, happens to exist.**

Glenn G. Morris, *Personal Liability for Corporate Participants Without Corporate Veil-Piercing: Louisiana Law*, 54 La. L. Rev. 207, 244–61 (1993).

A de novo review of the record establishes genuine issues of material fact regarding Kaltenbach's exposure for personal liability to Jessica for the harm she suffered as a result of Kaltenbach's failure to perform her duties as a nurse in charge of Jessica's care. Kaltenbach wore two hats, one as an owner of Genesis, and another as the Director of Nursing. Kaltenbach failed to fulfill her duties owed to Jessica in

both regards.  She enjoys no protection behind any corporate veil for her serious, and what appears to be callous, failure to safeguard her patient who functions at too low a level of understanding to watch out for herself.  For these reasons I respectfully dissent in part from the majority's opinion.